917 P.2d 451

**CITY OF LAS CRUCES, a municipal corporation, Petitioner–Appellant,**

v.

**PUBLIC EMPLOYEE LABOR RELATIONS BOARD, Patrick J. Halter, its Director, Bill Giron, its Chairman, James Keaton, and Dick Loy, Respondents–Appellees.**

No. 23207.

Supreme Court of New Mexico.

May 7, 1996.

City of Las Cruces, Harry S. (Pete) Connelly, Las Cruces, Martin, Lutz & Brower, P.C., William L. Lutz, Las Cruces, for Appellant.

Tom Udall, Attorney General, Albert J. Lama, Elizabeth A. Glenn, Assistant Attorneys General, Santa Fe, for Appellees.

Simon & Oppenheimer, Jane Bloom Yohalem, Morton S. Simon, Santa Fe, Bredhoff & Kaiser, P.L.L.C., Robert H. Chanin, Francis R.A. Sheed, Washington, DC, for Amici Curiae NEA–NM, et al.

## OPINION

BACA, Justice.

Appellant City of Las Cruces ("the City") filed a petition in district court against Appellees, the Public Employee Labor Relations Board, its board members, and its executive director (collectively "the PELRB"), to secure production of certain documents relating to a representation election. The PELRB refused to produce the documents on the grounds that they are protected from public inspection under Section 14–2–1(F) of the Inspection of Public Records Act, NMSA 1978, §§ 14–2–1 to –12 (Repl.Pamp.1995). Section 14–2–1(F) provides that "[e]very person has a right to inspect any public records of this state *except . . . as otherwise provided by law.*" (Emphasis added.) The district court issued an order denying production of the requested documents. We address whether the district court erred in finding that Section 14–2–1(F), which protects certain public records from public inspection "as otherwise provided by law," *incorporates a PELRB regulation which requires that the requested documents remain confidential.* We note jurisdiction under NMSA 1978, Section 34–5–14(C)(2) (Repl.Pamp.1990) (providing certification from Court of Appeals to Supreme Court matters that involve issues of substantial public interest), and affirm.

## I.

On January 19, 1995, the Las Cruces Police Officers Association filed a petition with the Las Cruces Labor Management Relations Board ("the Las Cruces Labor Board"), requesting a representation election pursuant to Section 10–7D–14(A) of the Public Employee Bargaining Act ("the PEBA"), NMSA 1978, §§ 10–7D–1 to –26 (Repl.Pamp.1995). Section 10–7D–14(A) provides that before a representation election can be conducted, a petition must be filed with the PELRB or the local labor board containing signatures of at least 30 percent of the public employees in the appropriate bargaining unit. The PELRB or local labor board then must conduct a secret ballot representation election to

> determine whether and by which labor organization the public employees in the appropriate bargaining unit shall be represented. The ballot shall contain the names of any labor organization submitting a petition containing signatures of at least ten percent of the public employees within the appropriate bargaining unit. The ballot shall also contain a provision allowing the public employee to indicate whether he desires to be represented by a labor organization.

Section 10–7D–14(A). The Las Cruces Labor Board requested, and the PELRB agreed, that the PELRB would assume the responsibility of processing the petition and conducting the election.

On March 2, 1995, the City, pursuant to the Inspection of Public Records Act, asked the PELRB to produce copies of all documents concerning the representation election, including the petition containing the signatures of at least 30 percent of the members of the bargaining unit. The PELRB refused, contending that release of the signatures would undermine public policy considerations expressed in Section 10–7D–5 (providing right of public employees to join or assist labor organization for collective bargaining) and Section 10–7D–14 (providing that representation election be conducted by secret ballot). The PELRB also relied on Section 16.5–10(a) of the Las Cruces City Municipal Code and PELRB Regulation 1.17, which provide:

> Evidence of a showing of interest submitted to the Board in support of a representation petition: (i) shall remain the property of the party submitting such evidence; (ii) shall not become property of the Board; (iii) *shall be kept confidential* by the Board; and (iv) shall be returned to the party that submitted the same upon the close of the case. (Emphasis added.)

The City petitioned the district court for a writ of mandamus, or in the alternative, an injunction to compel production of the requested documents. After a hearing, the district court quashed the writ it had previously issued and denied the request for permanent relief, finding inter alia that the protection afforded public employees under Regulation 1.17 is consistent with the National Labor Relations Act, *see* 29 U.S.C. § 159 (1994), which guarantees secret-ballot elections, and that the enumerated exception in Section 14–2–1(F), "as otherwise provided by law," incorporates the limitation on access found in the PEBA. The court also found that its denial of access to the documents was consistent with the "rule of reason," which protects public records when there is countervailing public policy favoring non-disclosure and that release of the documents would constitute an unwarranted invasion of privacy. The City appealed to the Court of Appeals, which certified the matter to this Court upon the filing of the docketing statement. The case was briefed and argued before this Court.

## II.

### A.

■ We address whether the exception to the right to inspect public records embodied in Section 14–2–1(F) for records whose confidentiality is "as otherwise provided by law" incorporates a regulation promulgated by the PELRB, which requires that the petition be kept confidential. On appeal, the City contends that Section 14–2–1(F), "as otherwise provided by law," incorporates only confidentiality provisions of *statutes*, thus precluding the State from relying upon regulations promulgated by an administrative board. Additionally, the City alleges that the regulations attempt to modify the Inspection of Public Records Act in order to ensure the confidentiality of the documents at issue. We disagree. Whether a rule has the force of law depends on whether the rule was promulgated in accordance with the statutory mandate to carry out and effectuate the purpose of the applicable statute. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 356–57, 871 P.2d 1352, 1362–63 (1994). Al-

though Section 1.17 is a "regulation" promulgated by an administrative board, its status as a regulation in no way diminishes the legal force of its provision. *Cf. Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (stating, "If not in conflict with legislative policy, legislatively authorized rules and regulations have the force of law."). We hold that "as otherwise provided by law" as used in Section 14–2–1(F) contemplates a regulation properly promulgated to further the legislative intent behind the PEBA. We also hold that the PELRB properly effectuated the PEBA's intent by promulgating Regulation 1.17 to mandate the confidentiality of representation petitions.

■ The PEBA provides, "[t]he [PELRB] shall promulgate rules and regulations necessary to accomplish and perform its functions and duties as established in the [PEBA]." Section 10–7D–9(A). This regulation effectuates the provisions of the PEBA that protect the rights of public employees to organize for collective bargaining. The PEBA also specifically provides that an employer shall not:

A. discriminate against a public employee . . . because of the employee's membership in a labor organization;

B. interfere with, restrain or coerce any public employee in the exercise of any right guaranteed under the [PEBA];

C. dominate or *interfere in the formation*, existence or administration of any labor organization;

D. discriminate in regard to hiring, tenure or any term or condition of employment in order to encourage or *discourage membership in a labor organization;*

E. discharge or otherwise discriminate against a public employee because he has signed or filed an affidavit, petition, . . . *or because a public employee is forming, joining or choosing to be represented by a labor organization* [.] (Emphasis added.)

Section 10–7D–19. Further, the PEBA guarantees the right of public employees to participate in forming, joining, or assisting any labor organization without interference, restraint or coercion, Section 10–7D–5, and to conduct representation elections in secret, Section 10–7D–14.

The PEBA also empowers public employers, such as the City, to "create a local board similar to the [PELRB]. Once created and approved, the local board shall assume the duties and responsibilities of the [PELRB]." Section 10–7D–10(A). By promulgating a regulation that protects representation petitions from public disclosure, the PELRB or the local board may carry out the duties and responsibilities necessary to implement the PEBA. In exercising its duties and responsibilities, the PELRB and the Las Cruces Labor Board adopted a regulation that protects representation petitions from public disclosure. Specifically, Regulation 1.17 effectuates the provisions of the PEBA to protect the rights of public employees to collective bargaining and to ensure that their choice to do so remains private. Accordingly, we hold that Section 14–2–1(F), which protects certain public documents from public inspection "as otherwise provided by law," incorporates Regulation 1.17, a statutorily authorized regulation.

### B.

■ In determining whether certain public documents may be foreclosed from public inspection, we must balance the public's interest in inspecting these documents against the police officers' interest in keeping them confidential. Clearly, there is strong public policy favoring access to public records. *State ex rel. Newsome v. Alarid,* 90 N.M. 790, 797, 568 P.2d 1236, 1243 (1977). In *Newsome* this Court stated, "a citizen has a fundamental right to have access to public records. The citizen's right to know is the rule and secrecy is the exception. Where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed." *Id.*

■ On the other hand, "[t]he public's right of inspection is not without qualification. There may be circumstances under which the information contained in a record can be justifiably withheld from the person seeking it." *Id.* at 795, 568 P.2d at 1241 (quoting *MacEwan v. Holm,* 226 Or. 27, 359 P.2d 413, 420–21 (1961)). As one federal court observed, "To permit disclosure of certain types of information could ... threaten the well-being of individual citizens by unnecessarily revealing information of a personal nature." *Madeira Nursing Ctr. Inc. v. NLRB, Region No. 9,* 615 F.2d 728, 730 (6th Cir.1980).

We presume that the Legislature, in passing Section 14–2–1 and protecting specific public records from public disclosure, has done so pursuant to appropriate public policy considerations. In *State ex rel. Barber v. McCotter,* for example, we held that Section 14–2–1(C) (excepting from public inspection "letters or memorandums which are matters of opinion in personnel files") protected from public inspection the personnel files of five former public employees who had been terminated for disciplinary reasons. 106 N.M. 1, 1–2, 738 P.2d 119, 119–20 (1987). We reasoned that the privilege belonged to the terminated employees and that their own privacy would be compromised if the files were opened to the public. *Id.* at 2, 738 P.2d at 120; *see also Newsome,* 90 N.M. at 794, 568 P.2d at 1240 (recognizing that Legislature anticipated release of certain information from personnel file could seriously damage employee).

■ In the instant case, the relevant public policy involves a public employee's right to "form, join or assist any labor organization for the purpose of collective bargaining ... without interference, restraint or coercion," Section 10–7D–5, and any interpretation of Section 14–2–1 must be viewed in that light. A public employee's privacy interest in his personal position regarding union representation requires protecting representation petitions from public disclosure. *See Pacific Molasses Co. v. NLRB Regional Office # 15,* 577 F.2d 1172 (5th Cir.1978) (holding Freedom of Information Act, 5 U.S.C. § 552, does not compel disclosure of union representation card because of employee's privacy interest in union representation). We are persuaded that an invasion of that privacy interest would have a serious effect. As we have noted above, public employees have a right to organize for collective bargaining purposes. If we were to allow disclosure of the representation petition, that right would be seriously undermined. Because employees occupy a subordinate position to that of the

employer, employers may retaliate against employees who support labor activities. Whether that threat is real or is simply perceived, the likely result would be "that employees would be 'chilled' when asked to sign a union card if they knew the employer could see who signed." *Committee on Masonic Homes v. NLRB*, 556 F.2d 214, 221 (3d Cir.1977). Here, we can perceive of no benefit to the public that would outweigh the police officers' privacy interest in keeping the representation petitions confidential.

### III.

We hold that Section 14–2–1(F), "as otherwise provided by law," incorporates Regulation 1.17, an administrative regulation that effectuates the Legislature's intent in enacting the Public Employee Bargaining Act: to protect the right of public employees to organize for collective bargaining purposes. Additionally, we hold that any benefit to the public from inspecting the representation petition would be significantly outweighed by the police officers' privacy interest. The decision of the district court is affirmed.

**IT IS SO ORDERED.**

MINZNER, J., and MICHAEL E. VIGIL, District Judge (Sitting by designation).