**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2019-NMCA-061

Filing Date: July 18, 2019

No. A-1-CA-36299

A. BLAIR DUNN,

      Plaintiff-Appellant,

v.

KATHY BRANDT, Guardian Ad
Litem for Second Judicial District
Court, and SECOND JUDICIAL
DISTRICT COURT,

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert J. Mitchell, Jr., District Judge**

Released for Publication October 29, 2019.

Western Agriculture, Resource
and Business Advocates, LLP
A. Blair Dunn
Albuquerque, NM

Pro Se Appellant

Brant & Hunt, Attorneys
John M. Brant
Albuquerque, NM

for Appellee Kathy Brandt

Hector H. Balderas, Attorney General
Ari Biernoff, Assistant Attorney General
Joseph Dworak, Assistant Attorney General
Santa Fe, NM

for Appellee Second Judicial District Court

Martinez, Hart, Thompson & Sanchez, P.C.
F. Michael Hart
Julio C. Romero
Albuquerque, NM

Peter Klages
Albuquerque, NM

for Amici Curiae Advocacy, Inc., Pegasus Legal Services for Children, Martha Kaser, Sarah Armstrong, and Tiffany Oliver Leigh

**OPINION**

**VANZI, Judge.**

**{1}** Plaintiff A. Blair Dunn appeals the dismissal of his enforcement action under the Inspection of Public Records Act (IPRA). NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2019). We affirm because disclosure of the records to Plaintiff is barred by a protective order or by the judicial deliberation privilege recognized in *Pacheco v. Hudson*, 2018-NMSC-022, ¶ 39, 415 P.3d 505.

**Background**

**{2}** Plaintiff is the petitioner in a domestic relations matter in the Second Judicial District Court (the SJDC) that involves his child, now ten years old. *See Dunn v. Dunn*, No. D-202-DM-2011-00839. On Plaintiff's motion, the district court appointed Defendant Kathleen Brandt (Brandt) as guardian ad litem to the child. *See* NMSA 1978, § 40-4-8 (1993) (permitting appointments of guardians ad litem); *see also* Rule 1-053.3 NMRA (governing appointment of guardians ad litem in domestic relations cases).[1] Consistent with Rule 1-053.3(F), the order required Brandt to:

  a.    interview the child face-to-face outside the presence of both parents and counsel i[f] the child is [six] (6) years of age or older;

  b.    interview all parties and any available parent subject [to] Rule[] 16-402 NMRA;

  c.    interview each mental health professional treating the child after obtaining any necessary authorization[;]

  d.    interview any other person[s] and/or review any relevant records the [guardian ad litem] deems reasonably necessary after obtaining any necessary authorization;

---

1Amendments to Rule 1-053.3 became effective on December 31, 2017. These amendments are not relevant to our analysis. All citations herein are to the current rule, except as noted.

e.       determine the child's wishes, if appropriate;

f.       submit, but do not file, a written report of investigation and separate written recommendations to all parties and counsel at least ten days before the recommendations are filed with the court, except in the case of emergency;

g.       file the recommendations, but not the report, with the [c]ourt; perform the duties to the child as set forth in Rule 1-053.3(H) and (I) NMRA[;] and[]

. . . .

i.       [i]nvestigate any health/medical issues affecting the minor child.

Plaintiff served Brandt with a discovery request seeking "all correspondence received by you or produced by you—whether transmitted by electronic means or by USPS—with either party or any other person in relation to the [domestic relations] case." In response, Brandt sought a protective order, in which she asserted that she "serves as an arm of the [district c]ourt and assists the [district] court in discharging its duty to adjudicate the child's best interests and as such should not have to disclose her work prior to the submission of a report" and that "P[laintiff]'s discovery request is overbroad, oppressive and unduly burdensome. Moreover it appears to be calculated as part of a litigation strategy to intimidate [Brandt] or otherwise force her to withdraw." Plaintiff apparently did not respond to Brandt's motion, and the district court issued a protective order on March 3, 2016 (the protective order), stating, "The Guardian ad Litem's Motion for Protective Order is granted. The Guardian ad Litem shall not be required to respond to P[laintiff]'s Interrogatories or Request for Production."

**{3}**     Four days later, Plaintiff emailed Brandt a request to "produce all records of communications sent or received by you in any form in the [domestic relations] case." Plaintiff stated, "As . . . you are an arm of the [district c]ourt please treat this [as] an IPRA request . . . to you in your official capacity." Brandt did not respond to this request. On March 11, 2016, Plaintiff sent a copy of the request to the designated custodian of records at the SJDC. After first requesting additional time to respond, the records custodian denied Plaintiff's request on March 30, 2016. *See* § 14-2-10 (permitting the records custodian to request additional time to respond to broad requests); § 14-2-11 (governing denial of IPRA requests). The records custodian based the denial on its conclusion that (1) Brandt's records were not public records as defined by IPRA; (2) the SJDC records custodian is not the proper custodian of the records; (3) the records are subject to the protective order issued in the domestic relations case; and (4) Brandt is entitled to quasi-judicial immunity under *Kimbrell v. Kimbrell*, 2014-NMSC-027, 331 P.3d 915.

**{4}**     Plaintiff filed the instant action for a declaratory judgment ordering production of the records, naming both Brandt and the SJDC as defendants. All parties moved for

summary judgment. After hearing argument, the district court granted summary judgment in favor of Brandt and the SJDC (collectively, Defendants) and denied Plaintiff's motion. Plaintiff appealed.

**Discussion**

**{5}**     Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. On appeal, Plaintiff does not argue that the presence of a "genuine issue as to any material fact" requires reversal of the district court's judgments. Instead, he maintains that the district court erred in ruling that, assuming records responsive to his IPRA request exist, Defendants nevertheless did not violate IPRA by withholding them. "We review an order granting summary judgment de novo." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 22, 294 P.3d 1276.

**{6}**     "Our democratic system of government necessarily 'assumes the existence of an informed citizenry. . . . Without some protection for the acquisition of information about the operation of public institutions . . . the process of self-governance contemplated by the Framers would be stripped of its substance.' " *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 1, 283 P.3d 853 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 31-32 (1978) (Stevens, J., Brennan, J. & Powell, J. dissenting)). IPRA "give[s] practical effect to this principle[.]" *Republican Party of N.M.*, 2012-NMSC-026, ¶ 1. "Recognizing that a representative government is dependent upon an informed electorate," the Legislature declared "that all persons are entitled to the greatest possible information regarding the affairs of government[.]" Section 14-2-5. Any analysis of IPRA actions therefore "begin[s] . . .  with the strong presumption that the public has a right to inspect the [records] at issue." *Cox v. N.M. Dep't of Pub. Safety*, 2010-NMCA-096, ¶ 16, 148 N.M. 934, 242 P.3d 501. "This right is limited only by the Legislature's enumeration of certain categories of records that are excepted from inspection." *Republican Party of N.M.*, 2012-NMSC-026, ¶ 13. The statutory exceptions conclude with a catch-all category: "as otherwise provided by law." Section 14-2-1(H). This category "includes statutory and regulatory bars to disclosure, constitutionally mandated privileges, and privileges established by our rules of evidence." *Pacheco*, 2018-NMSC-022, ¶ 39 (internal quotation marks and citation omitted).

**{7}**     On appeal, Plaintiff argues that a guardian ad litem's records are subject to IPRA because a guardian ad litem acts as an "arm of the court." In support of this proposition, Plaintiff argues that the nine factors set forth in *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, 287 P.3d 364, indicate that Brandt functioned as a public entity whose records fall within IPRA's reach. Plaintiff further argues that the quasi-judicial immunity recognized in *Kimbrell* does not immunize Brandt from IPRA actions, and that none of the exceptions to IPRA apply to Brandt's records. Plaintiff does not address Brandt's argument that the protective order precludes disclosure here, except to state that "[t]he protective order does not provide a shield because it is rooted in the same flawed logic as the IPRA denial" and that "[i]t is beyond argument that [Plaintiff] is allowed to accept the reasoning of the [d]istrict [c]ourt that [Brandt] was an

agent of the [district c]ourt, and upon that basis assert that [Brandt] was potentially subject to IPRA."

**{8}**     IPRA does not address the effect of a protective order on disclosure of public records, nor did we locate, after diligent search, a New Mexico case considering whether a protective order falls within IPRA's "as otherwise provided by law" exception. *Compare* § 14-2-1(H), *with* 65 Pa. Stat. and Cons. Stat. Ann. § 67.305(a)(3) (West 2009) (providing that records may be exempt from public "disclosure under any . . . Federal or State law or regulation *or judicial order or decree*" (emphasis added)). *See Pacheco*, 2018-NMSC-022, ¶ 39. Without deciding that question, we nevertheless conclude that the district court properly granted summary judgment to Defendants because the protective order precludes disclosure of Brandt's records to Plaintiff under the circumstances here. We also conclude that, to the extent the SJDC is in possession of communications between the district court and Brandt, the judicial deliberation privilege recognized in *Pacheco* protects those records from public disclosure.

**I.     The Protective Order Precludes Disclosure of Brandt's Records to Plaintiff Under the Circumstances**

**{9}**     Assuming without deciding that Brandt's records are public records subject to IPRA, denial of Plaintiff's request did not violate IPRA because the protective order prohibits disclosure of the records to Plaintiff. It is undisputed that the protective order prohibits disclosure to Plaintiff of the same materials covered by the IPRA request. Moreover, Plaintiff does not assert that the district court lacked jurisdiction to enter the protective order. "[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980); *In re Philip M. Kleinsmith*, 2005-NMCA-136, ¶¶ 11-12, 138 N.M. 601, 124 P.3d 579. Statutes governing public access to records do not negate this fundamental rule. In *GTE Sylvania, Inc.*, for instance, the United States Supreme Court held that an agency did not "improperly" withhold public documents when a federal district court injunction prohibited it from releasing the documents pending trial. *GTE Sylvania, Inc.*, at 378, 386. The Court noted that, because of the injunction, "[t]here simply has been no discretion for the agency to exercise[,]" *id.* at 386, and that there was nothing in the Freedom of Information Act's (FOIA) text or history to suggest that, "in adopting [FOIA] to curb agency discretion to conceal information, Congress intended to require an agency to commit contempt of court in order to release documents." *Id.* at 387.[2] Several states have applied this reasoning in the context of their own public records laws. *See, e.g.*, *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 64 (stating that, "where a . . . court with personal and subject-matter jurisdiction issues an injunction, the injunction must be obeyed, however erroneous it

___

2Our courts have declined to rely on federal case law to construe IPRA, noting that IPRA provides greater access to public records than its federal counterpart and differs in other respects. *See, e.g., San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 38, 150 N.M. 64, 257 P.3d 884. Here, however, we rely on *GTE Sylvania, Inc.* only as to the impact of a court order on an agency's ability to comply with a statute. To the extent we construe IPRA, we rely on New Mexico case law.

may be, until it is modified or set aside by the court itself or reversed by a higher court" even when the records sought are public records); *Bangor Publ'g Co. v. Town of Bucksport*, 682 A.2d 227, 230 (Me. 1996) ("The [defendants] . . . properly refused to disclose the documents that had been ruled exempt by the protective order. Both were parties to the protective order; thus each would be in contempt for violating a court order if they disclosed the confidential documents.").

**{10}** Similarly, we discern nothing in IPRA's plain language or in IPRA case law suggesting that our Legislature intended to require a governmental entity to disclose public records in defiance of a court order. Although the exceptions to IPRA's mandate of disclosure are narrowly drawn, a party may prevail on an IPRA enforcement action under Section 14-2-12 only if the custodian's denial of the request is "wrongful." *Faber v. King*, 2015-NMSC-015, ¶ 11, 348 P.3d 173 ("IPRA . . . forbids the agency from wrongfully denying the request."). An agency's denial of an IPRA request is wrongful when the agency withholds documents based on an inapplicable privilege or exemption. *See, e.g.*, *Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 40, 299 P.3d 424 (stating that the agency was "liable for wrongful withholding" of the requested documents where the agency relied on a privilege that had been negated by case law). However, a denial in accordance with an enforceable court order can hardly be wrongful. *See City of Las Cruces v. Pub. Emp. Labor Relations Bd.*, 1996-NMSC-024, ¶ 9, 121 N.M. 688, 917 P.2d 451 (noting that "[t]here may be circumstances under which the information contained in a [public] record can be justifiably withheld" (internal quotation marks and citation omitted)); *In re Philip M. Kleinsmith*, 2005-NMCA-136, ¶ 11 ("Generally, a party must obey an order issued by a court with subject matter and personal jurisdiction until the order is set aside."); *cf. GTE Sylvania, Inc.* 445 U.S. at 387 ("To construe the lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as 'improperly' withholding documents . . . would do violence to the common understanding of the term 'improperly' and would extend [FOIA] well beyond the intent of Congress."). Indeed, "[t]he orderly process of law demands that respect and compliance be given to orders issued by courts possessed of jurisdiction . . . and one who defies the order of a court having jurisdiction does so at his peril." *Gedeon v. Gedeon*, 1981-NMSC-065, ¶ 15, 96 N.M. 315, 630 P.2d 267 (internal quotation marks and citation omitted).

**{11}** Moreover, to view IPRA as superseding a protective order would be contrary to constitutional separation of powers principles. "The district court is given broad discretion" to issue protective orders under Rule 1-026(C) NMRA. *Bd. of Comm'rs of Doña Ana Cty. v. Las Cruces Sun-News*, 2003-NMCA-102, ¶ 8, 134 N.M. 283, 76 P.3d 36, *overruled on other grounds by Republican Party of N.M.*, 2012-NMSC-026, ¶ 18. Rule 1-026 provides that the district court may limit discovery in a number of situations. *See* Rule 1-026(B)(2) (providing that "[t]he court shall limit use of discovery methods" when the discovery sought is duplicative or burdensome); Rule 1-026(C) (permitting the district court to issue a protective order, in its discretion, that prohibits, limits, or directs discovery). Rule 1-026 is promulgated by our Supreme Court, which has "the ultimate rule making authority over procedure[.]" *State v. Serna*, 2013-NMSC-033, ¶ 14, 305 P.3d 936. "[The Supreme] Court's plenary authority to regulate procedure stems from

[its] constitutional power of 'superintending control over all inferior courts.' " *Id.* (quoting N.M. Const. art. VI, § 3). Based on the constitutional authority vested in the Supreme Court, it is well-settled that "the Legislature cannot override by statute what th[e Supreme] Court has promulgated by rule." *Serna*, 2013-NMSC-033, ¶ 13. Since the protective order here was permitted by Rule 1-026 and issued by a court with jurisdiction, it follows that "construing [IPRA] to invalidate [this] otherwise providently entered protective order would raise serious constitutional questions about the validity of that law." *Commonwealth v. Fremont Inv. & Loan*, 944 N.E.2d 1019, 1023 (Mass. 2011); *see Gonzales v. Atnip*, 1984-NMCA-128, ¶ 23, 102 N.M. 194, 692 P.2d 1343 ("Any legislative scheme which would control or exercise the inherent powers of the judiciary would be violative of Article III and Article VI, Section 1 of the New Mexico Constitution." (internal quotation marks and citation omitted)). We conclude that the district court properly granted summary judgment to Defendants because the protective order barred disclosure of the requested records to Plaintiff.

**{12}**     *Faber* does not hold otherwise. In that case, the plaintiff sued a public entity for gender discrimination in employment, and the federal district court granted the defendant's motion for a stay of discovery pending resolution of a motion to dismiss based on immunity. *See* 2015-NMSC-015, ¶ 2. The plaintiff then filed an IPRA request "seeking employment data for every attorney who had been employed by the the [defendant's o]ffice." *Id.* ¶ 3. The records custodian denied the request, stating that the request "appear[ed] to circumvent the discovery process and the [stay]." *Id.* (internal quotation marks omitted) The plaintiff then filed an IPRA enforcement action in the state district court. *See id.* ¶ 4. "The state district court found that the stay of discovery entered by the federal court did not preempt the statutory rights granted . . . by IPRA, and that the [defendant] violated IPRA by denying [the plaintiff]'s . . . request." *Id.* The state district court awarded damages and the defendant appealed. *See id.* ¶ 5.

**{13}**     On appeal, the Supreme Court noted that "[t]he determination of the IPRA violation was not at issue." *Id.* Hence, the Court did not address the propriety of the district court's ruling that the discovery stay did not foreclose the plaintiff's IPRA action. Moreover, *Faber* is distinguishable on its facts. Unlike here, the federal court's order did not prohibit disclosure of any records to the plaintiff. Instead, the stay merely paused the discovery process pending the court's determination of whether the defendant was immune from suit. *See id.* ¶ 2; *cf. City of Allentown v. Brenan*, 52 A.3d 451, 456 (Pa. Commw. Ct. 2012) (holding that a public records request was not barred by a court order where the federal judge's order did not preclude disclosure of the requested records, but rather, was "premised solely upon the untimeliness of [the p]laintiffs' " motion to compel disclosure and a lack of authority, and the federal judge "never suggested that the additional discovery materials were precluded or protected from disclosure").

**{14}**     We recognize that IPRA and discovery are different and distinct methods to obtain information and that citizens' involvement in litigation alone does not deprive them of their ability to obtain public records under IPRA. *Cf. Republican Party of N.M.*, 2012-NMSC-026, ¶ 49 (noting differences between discovery and IPRA requests). Our

holding does not undermine that principle. Instead, it rests entirely on the fact of the protective order and the public's interest in "the orderly process of law." *Gedeon*, 1981-NMSC-065, ¶ 15 (internal quotation marks and citation omitted). A contrary holding would subject Defendants to conflicting orders from the court, which would work a "disservice to the orderly administration of justice[.]" *Bangor Publ'g Co.*, 682 A.2d at 231.

## II. The Judicial Deliberation Privilege Precludes Disclosure of Communications Between the District Court Judge and Brandt

**{15}** Plaintiff argues that the SJDC is obliged to disclose communications between Brandt and the judge presiding over the domestic relations case. Plaintiff contends he "is entitled to [Brandt's] communications with the [district c]ourt. No statutory or otherwise cognizable privilege or exception applies to such communications." However, in *Pacheco*, decided in the midst of briefing for this appeal, our Supreme Court held that a judicial deliberation privilege protects from public disclosure a judge's "internal decision-making communications that are at the core of the constitutional duties of the judicial branch[.]" 2018-NMSC-022, ¶ 3. Applying a "functional analysis," the Court went on to hold that the privilege protects from disclosure a judge's communication with the judge's staff, as well as other "judicial branch colleague[s]." *Id.* ¶¶ 46, 54. Thus, the question here is whether the judge's communications with Brandt fall within that privilege.

**{16}** We conclude that they do. "The function of Rule 1-053.3 guardians ad litem is without question to act as an arm of the court[.]" *Kimbrell*, 2014-NMSC-027, ¶14; *see* § 40-4-8. Moreover, the guardian ad litem "assists the court in discharging *its duty* to adjudicate the child's best interests." Rule 1-053.3(A) (emphasis added). Other provisions of Rule 1-053.3 emphasize the guardian ad litem's role vis á vis the appointing judge. For instance, Rule 1-053.3(C) provides that "[t]he guardian ad litem appointed under this rule is a 'best interests attorney' who shall provide independent services to protect the child's best interests without being bound by the child's or either party's directive or objectives and who shall make findings and recommendations." Rule 1-053.3(F)(1) and (2) set forth the guardian ad litem's duties, which include interviewing the parties and relevant service providers, as well as determining the child's wishes. The guardian ad litem must file recommendations with the district court. Rule 1-053.3(F)(4) and (5). Importantly, Rule 1-053.3(D) provides that "[i]n no event shall the court delegate the ultimate determination of the child's best interests, unless the parties have agreed to arbitrate such issues[.]" Together, these provisions indicate that, in carrying out the delegated tasks, a guardian ad litem "act[s] as an extension of the court by performing quasi-judicial functions of investigating the facts and report[s] to the court what placement [i]s in the child's best interests." *Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶ 22, 111 N.M. 391, 806 P.2d 40 (emphasis, alteration, internal quotation marks, and citation omitted). Impairment of a guardian ad litem's work therefore "obstruct[s] the pathway to ascertaining the truth and impair[s] the judge's ability to perform his or her judicial duties." *Kimbrell*, 2014-NMSC-027, ¶ 12. In other words, as to the specific cases for which guardians ad litem are appointed, their

function is tantamount to that of a member of the judge's staff. *Cf. Pacheco*, 2018-NMSC-022, ¶ 53 (holding that the privilege protects communications between a judge and a law librarian whose duties include providing legal information and research services to judges). It follows that the judicial deliberation privilege bars public disclosure of Brandt's communications with the district court judge presiding over the domestic relations matter.

**Conclusion**

**{17}**    We hold that the district court properly granted Defendants' motions for summary judgment and denied Plaintiff's motion because, assuming without deciding that Brandt's records and communications fall within IPRA's definition of "public records," the protective order precludes disclosure of Brandt's records to Plaintiff and the judicial deliberation privilege protects communications between Brandt and the district court. Because these conclusions are dispositive, we do not address whether (1) the quasi-judicial immunity recognized in *Kimbrell* protects Brandt from an IPRA enforcement suit; (2) Plaintiff properly named Brandt as a defendant in this IPRA action; or (3) Plaintiff's IPRA action is an improper collateral attack on the protective order. We therefore affirm the district court's dismissal of Plaintiff's complaint.

**{18}    IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**