# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2024-NMCA-071**

**Filing Date: May 31, 2024**

**No. A-1-CA-40486**

**AMERICAN CIVIL LIBERTIES UNION
OF NEW MEXICO,**

        Plaintiff-Appellee/Cross-Appellant,

v.

**NEW MEXICO CORRECTIONS
DEPARTMENT and KEVIN NAULT,
in his official capacity,**

        Defendants-Appellants/Cross-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Bryan P. Biedscheid, District Court Judge**

Davis Law New Mexico
Nicholas T. Davis
Albuquerque, NM

ACLU-NM
Maria Martinez Sánchez
Leon Howard
Albuquerque, NM

for Appellee

Cuddy & McCarthy, LLP
Scott P. Hatcher
Robert A. Corchine
Carl J. Waldhart
Carlos J. Padilla
Santa Fe, NM

for Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles "Kip" Purcell

Albuquerque, NM

for Amicus Curiae New Mexico Foundation for Open Government

**OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}** We are presented with an appeal and cross-appeal arising from the American Civil Liberties Union of New Mexico's (the ACLU) action to compel the New Mexico Corrections Department (NMCD) to provide documents requested by the ACLU, pursuant to the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023). The district court ordered some documents to be produced, but ruled that some were exempt. On appeal, NMCD argues that all of the records requested are subject to the "as otherwise provided by law" catch-all exemption of IPRA. *See* § 14-2-1(L).[1] On cross-appeal, the ACLU argues the district court erred in concluding certain portions of the records could be withheld pursuant to a "clear necessity" standard. We conclude that all of the records at issue are subject to disclosure and therefore reverse in part and affirm in part.

**BACKGROUND**

**{2}** In August 2019, the ACLU sent an IPRA request to NMCD seeking public records including NMCD's use of force policy as well as any and all records related to its use of force. In response, NMCD agreed that its use of force policy and internal grievance reports were responsive but denied the request. NMCD asserted the documents were exempt based on the "as otherwise provided by law" exemption because the documents had been internally characterized as confidential. The ACLU then filed a complaint against NMCD and the records custodian for NMCD based on NMCD's failure to produce the documents.

**{3}** The ACLU filed a partial motion for summary judgment, and NMCD filed a cross-motion for summary judgment. The ACLU argued that NMCD improperly relied on its enabling statutes—NMSA 1978, § 33-1-6 (1981) and NMSA 1978, § 9-3-5(E) (2004)—to refuse to produce the documents under the catch-all exception to disclosure. The ACLU also argued that NMCD violated IPRA by issuing a blanket denial to its request. NMCD argued that the Corrections Act's enabling statute permitted it to protect inmates by designating documents as confidential. NMCD argued that its designations were sufficient to exempt the requested documents from production. After full briefing on both motions and after holding a hearing, the district court denied NMCD's motion and took the ACLU's motion under advisement. The district court ordered NMCD to produce all

---

[1]The amendment of the IPRA exemption in effect at the time the ACLU made its IPRA request was Section 14-2-1(H) (2019). Despite being renumbered in the 2023 amendment, the provision of IPRA relevant to this appeal is the same as the previous version and our analysis remains the same under the both versions of IPRA. *Compare* § 14-2-1(H) (2019), *with* § 14-2-1(L). Accordingly, this opinion refers to the current version of the statute.

documents responsive to the ACLU's request for an in camera review before ruling on its partial motion for summary judgment.

**{4}** After the in camera review, the district court partially granted the ACLU's motion. In its order, the district court noted that—with the benefit of the in camera review—its analysis of the ability of the NMCD's enabling statutes to serve as the basis for application of the "catch-all" exemption had changed since the hearing on the motion. The district court determined that "for a rule or regulation promulgated pursuant to [Section] 33-1-6 to create an exception to IPRA inspection, it must be clearly shown to be necessary for administration of the Corrections Act. Upon that showing of clear necessity, the enabling statute is sufficient to fall under the [']otherwise provided by law['] IPRA exception." The district court thus concluded that limited portions of the disputed records could properly be withheld, but that the remaining portions of the use of force policy and grievance reports were to be disclosed. Both parties appealed.

**DISCUSSION**

**{5}** There being no genuine issue of material fact, we review the grant of summary judgment in this case de novo. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. To resolve this dispute we must engage in statutory interpretation, which we also review de novo. *See Wood v. N.M. Educ. Ret. Bd.*, 2011-NMCA-020, ¶ 12, 149 N.M. 455, 250 P.3d 881. Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, [appellate courts] look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 14, 492 P.3d 586. Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted).

**{6}** The purpose of IPRA "is to ensure, and it is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. IPRA affirmatively sets forth that "[e]very person has a right to inspect public records of this state." Section 14-2-1. "This right is limited only by the Legislature's enumeration of certain categories of records that are excepted from inspection." *Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 13, 283 P.3d 853.

**{7}** At issue in this case—the so-called catch-all exception—is "as otherwise provided by law." Section 14-2-1(L). The "as otherwise provided by law" exception includes statutory and regulatory bars to disclosure as well as constitutionally mandated privileges. *Republican Party of N.M.*, 2012-NMSC-026, ¶ 13 (internal quotation marks and citation omitted); *see id.* ¶ 16 (stating that courts analyzing an IPRA claim must

"restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions").

**{8}** The Corrections Department Act allows the Secretary of Corrections (the Secretary) to "make and adopt such reasonable and procedural rules and regulations as may be necessary to carry out the duties of the department and its divisions." Section 9-3-5(E). The Corrections Act requires that the Secretary "adopt rules and regulations necessary for administration of the Corrections Act, and enforce and administer those so adopted." Section 33-1-6(B).

**{9}** NMCD contends that these provisions—by themselves—render the records the ACLU requested exempt from production under IPRA under its "as otherwise provided by law" exception. Specifically, NMCD claims that the enabling statutes allow it to lawfully declare certain public records confidential "where the challenged regulation is linked to the safe and constitutional operation of the NMCD." NMCD argues that under these enabling provisions, NMCD's decisions to maintain the confidentiality of public records have the force of law because "they are premised on a sound and compelling penological basis and necessary for the administration of New Mexico's penal system." NMCD goes so far as to argue that once it determines that public records are necessary for the administration of the penal system, they are exempt from IPRA disclosure unless the person or entity requesting the documents can "satisfy an extremely high burden by showing that the Secretary's confidentiality rules did not serve a legitimate penological interest or were not necessary for the administration of Corrections."

**{10}** NMCD bases its "penological necessity" argument largely on *Turner v. Safley*, 482 U.S. 78 (1987), which it argues "created a four-factor test to analyze the lawfulness of prison regulations." We disagree that *Turner* applies to our analysis here. In *Turner*, the United States Supreme Court evaluated the constitutionality of two prison rules—one limiting correspondence between nonfamily member inmates at different institutions if deemed in the best interest of the parties and another that permitted an inmate to marry only with approval of the superintendent of the prison when there were compelling reasons to do so. *Id.* at 81-82. Inmates challenged the constitutionality of these two regulations. *Id.* The Supreme Court's task was "to formulate a standard of review for prisoners' constitutional claims." *Id.* at 85. It determined that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

**{11}** *Turner* dealt with an inmate's ability to challenge the constitutionality of prison regulations. *Id.* NMCD recognizes that *Turner* did not evaluate prison regulations in the context of public records disclosure laws. *Turner* does not address the issue at hand— whether our Legislature's strong policy of free and open access to public records permits NMCD to declare public records confidential and exempt from disclosure under IPRA. *Turner*'s discussion of "legitimate penological interests" and deference to prison authorities is irrelevant to NMCD's obligations under IPRA. *See id.* To import *Turner*'s analysis here would be to mix rutabagas and watermelons; the inquiries are that different.

**{12}**   Moreover, to evaluate the *Turner*-esque policy reasons relied on by NMCD for declaring the public records confidential would harken back to the "rule of reason," approach that our Supreme Court renounced in *Republican Party of New Mexico*, 2012-NMSC-026, ¶ 16. *See id.* (stating "courts now should restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the constitution").

**{13}**   Rather, our task is to determine if there is a specific provision of law that exempts the requested records from disclosure. Thus, we turn back to the statutes that NMCD argues permits it to withhold the public records at issue in this case. Both are general enabling statutes. *See* § 9-3-5(E) (allowing the Secretary to "make and adopt such reasonable and procedural rules and regulations as may be necessary to carry out the duties of the department and its divisions"); § 33-1-6(B) (requiring that the Secretary "adopt rules and regulations necessary for administration of the Corrections Act, and enforce and administer those so adopted"). By their plain language, neither addresses IPRA, the confidentiality of records or information, or the Secretary's ability to declare records or information as confidential. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("[T]he plain language of a statute is the primary indicator of legislative intent." (internal quotation marks and citation omitted)).

**{14}**   Our Supreme Court has held that a general enabling statute alone is insufficient to qualify for the catch-all exception. In *City of Las Cruces v. Public Employee Labor Relations Board*, 1996-NMSC-024, ¶¶ 2-3, 5, 121 N.M. 688, 917 P.2d 451, our Supreme Court addressed whether the Public Employee Labor Relations Board (PELRB) could withhold a petition containing the signatures of members of a collective bargaining unit pursuant to the "as otherwise provided by law" exemption of IPRA. Our Supreme Court concluded the petition was exempt under IPRA's catch-all exception, relying in part[2] on a regulation providing that evidence of a showing of interest in a representation election "shall be kept confidential." *Pub. Emp. Rels. Bd.*, 1996-NMSC-024, ¶ 3 (emphasis, internal quotation marks, and citation omitted). The regulation was based on multiple statutes: the general enabling statute, *id.* ¶ 6 (citing NMSA 1978, Section 10-7D-9(A) (repealed 1992)); a statute which stated employers shall not "interfere in the formation" of any labor organization, "discourage membership in a labor organization," or discharge or otherwise discriminate against a public employee because they were forming, joining, or choosing to be represented, *id.* (emphasis and internal quotation marks omitted) (citing NMSA 1978, Section 10-7D-19 (repealed 1992)); a statute that guaranteed the right of public employees to participate in forming, joining, or assisting any labor organization without interference, restraint or coercion, *id.* (citing NMSA 1978, Section 10-7D-5 (repealed 1992)); and a statute that guaranteed the right of public employees to conduct representation elections in secret, *id.* (citing NMSA 1978, Section 10-7D-14 (repealed 1992)).

---

2Our Supreme Court also relied on the "rule of reason," *id.* ¶¶ 8-11, which, as we noted above, was disavowed in *Republican Party of N.M.*, 2012-NMSC-026, ¶ 16.

**{15}** While our Supreme Court stated that "the PELRB or the local board may carry out the duties and responsibilities necessary to implement the [Public Employee Bargaining Act]," *id.* ¶ 7, which mirrored the enabling statute, the conclusion that the information was exempt from disclosure was based on more specific statutes that related to the effects of disclosure and the confidentiality of the information. *See Edenburn v. N.M. Dep't. of Health*, 2013-NMCA-045, ¶ 26, 299 P.3d 424 (describing the basis of the exemption of disclosure in *Public Employee Labor Relations Board* as "the authorizing statute specifically prohibited discouraging, interfering with, restraining, or otherwise impeding employees' rights to organize"). *Public Employee Labor Relations Board* demonstrates that a general enabling statute on its own is not sufficient to grant authority to declare public records exempt from disclosure of IPRA requirements.

**{16}** NMCD also argues that New Mexico Corrections Department policy, CD-040100(C)(1)(g)(1)-(9), *Institutional Records* (2018), designates grievance reports and other internal incident reports as confidential. The purpose of IPRA "is to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. Internal policies or regulations simply cannot be used on their own to exempt public records from IPRA. There must be specific authorizing statutes that relate to the effects of disclosure and the confidentiality of the information. This holding represents another aspect of the general rule that "an administrative agency has no power to create a rule or regulation that is not in harmony with its statutory authority." *See Princeton Place v. N.M. Hum. Servs. Dep't*, 2022-NMSC-005, ¶¶ 28, 29, 503 P.3d 319 (internal quotation marks and citation omitted); *see also Edenburn*, 2013-NMCA-045, ¶ 26 ("A regulation making certain records private may be proper if the regulation is authorized by a statute and is necessary to carry out the statute's purposes." (internal quotation marks and citation omitted)). To allow internal policies or regulations to impede the release of public records would permit the catch-all exception for disclosure of IPRA to swallow the rule of disclosure based on the whim of NMCD or other government agencies. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361 (noting we do not interpret statutes to be "absurd, unreasonable, or otherwise inappropriate in application").

**{17}** We note with approval the observation in New Mexico Foundation for Open Government's amicus brief that most enabling statutes for cabinet level departments and other state and local entities use the same general verbiage NMCD relies on to describe their powers and responsibilities. Accepting NMCD's argument would allow a myriad of other entities to assert the same authority to declare documents beyond the reach of IPRA. Such a possibility would be directly contrary to the legislative policy of transparent governance.[3]

**{18}** We next briefly turn to the ACLU's cross-appeal. The district court determined that "for a rule or regulation promulgated pursuant to [Section] 33-1-6(B) to create an exception to IPRA inspection, it must be clearly shown to be necessary for

---

[3]NMCD is welcome to turn to the Legislature to craft a reasonable and acceptable exemption under IPRA.

administration of the Corrections Act." NMCD and the ACLU agree that the district court's "clear necessity" standard is improper, though for different reasons. NMCD argues that the standard "impermissibly and arbitrarily restricts agency rulemaking." The ACLU argues that the standard is unworkable because it is too broad and too discretionary; it is in effect, standardless. The district court's ruling unmistakably evokes the "rule of reason." We have determined neither Section 33-1-6(B) nor Section 9-3-5(E) provide the statutory authority required by *Republican Party of New Mexico* to exempt documents from disclosure. *See* 2012-NMSC-026, ¶ 16. To the extent the district court determined certain parts of the use of force policy and internal grievance reports could be withheld because they were "clearly shown to be necessary for the administration of the Corrections Act," we reverse.

**CONCLUSION**

**{19}** We affirm in part, reverse in part, and remand for proceedings in accordance with this opinion.

**{20} IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation.**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**