# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMSC-013**

**Filing Date: July 14, 2020**

**No. S-1-SC-37094**

**ANDREW JONES,**

Plaintiff-Petitioner,

v.

**CITY OF ALBUQUERQUE
POLICE DEPARTMENT and
DEPARTMENT OF PUBLIC
SAFETY OF THE STATE OF
NEW MEXICO,**

Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI
Denise Barela-Shepherd, District Judge**

Released for Publication September 8, 2020.

Kennedy Kennedy & Ives, LLC
Adam C. Flores
Laura Louise Schauer Ives
Joseph Patrick Kennedy
Shannon L. Kennedy
Albuquerque, NM

for Petitioner

Doughty Alcaraz, P.A.
Robert M. Doughty III
Jeffrey Merrill Mitchell
Albuquerque, NM

for Respondents

Daniel Yohalem
Katherine Elizabeth Murray
Santa Fe, NM

Leon F. Howard, III
Albuquerque, NM

Peifer, Hanson & Mullins, PA
Lauren Keefe
Albuquerque, NM

for Amici Curiae New Mexico Foundation for Open Government and American Civil
Liberties Union of New Mexico

**OPINION**

**VIGIL, Justice.**

**{1}** This case requires us to examine NMSA 1978, Section 14-2-1(A)(4) (2011, amended 2019),[1] a provision of the Inspection of Public Records Act (IPRA) that creates an exception from inspection for certain law enforcement records. Relying on the plain language of Section 14-2-1(A)(4), we conclude that Section 14-2-1(A)(4) does not create a blanket exception from inspection for law enforcement records relating to an ongoing criminal investigation.

**{2}** Plaintiff Andrew Jones (Jones) appeals the order of the district court that granted summary judgment to the Department of Public Safety (DPS), thereby dismissing Jones's IPRA enforcement action. Jones argues that the district court misconstrued Section 14-2-1(A)(4) and incorrectly allowed DPS to withhold requested public records solely because the records related to an ongoing criminal investigation. Jones further argues that the Court of Appeals was incorrect to hold that he acquiesced to the district court's interpretation of Section 14-2-1(A)(4), was incorrect to hold that his lawsuit was moot, and wrongly dismissed his appeal.

**{3}** We conclude that Jones is correct. We reverse the Court of Appeals. We reverse the district court's grant of summary judgment to DPS, concluding that the district court's interpretation of Section 14-2-1(A)(4) was overbroad and contrary to the plain language of the statute. That misinterpretation also led the district court to incorrectly deny summary judgment to Jones at an earlier point in the case. Accordingly, we reverse that judgment as well.

**I.   BACKGROUND**

**{4}** James Boyd was shot and killed by Albuquerque Police Department officers on March 16, 2014. On April 8, 2014, Mr. Boyd's brother Andrew Jones sent a written request to DPS pursuant to IPRA for various records relating to the shooting. DPS responded fourteen days later, agreeing to produce a primary incident report, the

---

[1]Section 14-2-1 was amended in 2019. The provision corresponding to Section 14-2-1(A)(4) is now found at NMSA 1978, Section 14-2-1(D) (2019). Although equivalent in purpose, the provisions are not identical. For clarity, in this opinion we cite the 2011 version of Section 14-2-1.

personnel records of one of the officers involved, and one subpoena. DPS denied production of all other pertinent records in its possession.

{5} DPS denied production of the requested records for two reasons. First, and primarily, DPS grounded its refusal to produce the requested records in Section 14-2-1(A)(4), which exempts from the general IPRA disclosure requirement "law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime." DPS explained that the Federal Bureau of Investigation (FBI) was investigating the shooting, and asserted that "release of the requested information pose[d] a demonstrable and serious threat to [that] ongoing criminal investigation." Second, DPS relied on NMSA 1978, Section 29-3-3 (1979). DPS stated that Section 29-3-3 imposed a duty to cooperate with the FBI and that the FBI "specifically requested that DPS not publicly release evidence related to [its] investigation in order to maintain the integrity of its investigation." DPS stated that the requested records would be released "when the release of such records no longer jeopardize[d] the law enforcement investigation."

{6} Jones filed suit in district court pursuant to IPRA, claiming that DPS "made no attempt or effort to make non-exempt information, documents or material evidence available for Plaintiff's review, nor indicate how the records requested fall within the cited exemption." Jones sought production of the requested records, attorney fees, and costs, among other relief.

{7} Jones subsequently moved for summary judgment, contending that IPRA required disclosure of the requested records under the undisputed material facts. Jones argued that neither of the reasons offered by DPS—that there was an ongoing criminal investigation and that the FBI asked DPS to withhold the records—was legally sufficient to justify its refusal to produce the requested records.

{8} First, Jones argued that, even if the district court accepted DPS's contention that production of the records would pose "a demonstrable and serious threat to an ongoing criminal investigation," the IPRA exception cited by DPS—§ 14-2-1(A)(4)—was not satisfied. Nor, argued Jones, could DPS rely on the FBI's request that DPS withhold information related to the investigation, despite DPS's statutory duty "to cooperate" with federal law enforcement agencies. The duty to cooperate, stated Jones, does not imply that the requirements of IPRA must give way. Jones further pointed out that the FBI only requested that DPS withhold records if the delayed production was in accord with the IPRA exception from disclosure for certain law enforcement records, § 14-2-1(A)(4).

{9} In response to Jones's motion, DPS offered a broad interpretation of Section 14-2-1(A)(4) and marshalled evidence directed to meet that standard. DPS argued that, in enacting Section 14-2-1(A)(4), "the Legislature . . . intended for records pertaining to . . . ongoing investigations [to] remain sealed until the investigation is complete." DPS additionally stated that the requested records referenced an officer who was "the likely target of the FBI investigation[,]" which would implicate the aspect of Section 14-2-

1(A)(4) that exempts records that reveal individuals accused but not charged with a crime.

**{10}** DPS attached two documents to support its contention that it was entitled to withhold the requested records: an affidavit from the DPS cabinet secretary and a letter from the FBI. Both documents indicated that there was, indeed, an ongoing criminal investigation. DPS argued that whether there was an ongoing criminal investigation was a disputed issue of material fact. The documents also indicate that the FBI requested that DPS delay disclosure of related materials in order to maintain the integrity of the investigation, if possible under IPRA.

**{11}** After a hearing, the district court denied Jones's summary judgment motion. The district court found that whether there was an ongoing criminal investigation was both material and disputed.[2] It further found that the requested records were exempt from disclosure pursuant to Section 14-2-1(A)(4). In addition to denying summary judgment to Jones, the district court went further. It ordered that if the investigation remained ongoing by January 15, 2015: (1) DPS would be required to "produce a privilege log to [Jones]" providing a description of the withheld documents and the basis for denying production; (2) Jones would have an opportunity to challenge the privilege log; and (3) DPS would be required to "produce the requested records to the district court" to facilitate review of any challenges by Jones.

**{12}** DPS moved for summary judgment on April 15, 2015. DPS stated that it produced the records requested by Jones on January 14, 2015, subsequent to the completion of the FBI investigation. It further stated that the district court had already ruled that the (by then produced) records had been properly withheld pursuant to Section 14-2-1(A)(4). Thus, according to DPS, "enforcement [was] no longer available to [Jones]" and summary judgment was appropriate. In response, Jones did not deny that the records were provided in accordance with the procedure devised by the district court, but renewed his argument that DPS's initial refusal to produce the requested records was unlawful and that DPS construed Section 14-2-1(A)(4) too broadly.

**{13}** The district court granted DPS's summary judgment motion, concluding that there were no remaining issues of material fact and DPS was entitled to judgment as a matter of law. It was undisputed that DPS produced the requested records in accordance with the prior ruling of the district court, so inspection of the records was no longer at issue. The district court concluded that Jones could not be entitled to an award of attorney fees because the requested records were exempt from disclosure pursuant to Section 14-2-1(A)(4). To determine that the records were exempt from disclosure, the

---

2It is unclear to us why the district court found that there was dispute about whether there was an ongoing criminal investigation. Jones agreed there was an ongoing criminal investigation and disputed only whether the ongoing investigation was material: "We have admitted there's an ongoing investigation. . . . Of course there's an ongoing federal investigation. That doesn't matter. That doesn't shield [DPS] from having to [produce] public records." In any case, whether the record can support the finding of the district court on this point is not critical to our review.

district court explicitly relied on its earlier order denying summary judgment to Jones, which so found.

**{14}**   Jones appealed the district court's summary judgment order to the Court of Appeals. Over a dissent, the Court of Appeals affirmed by memorandum opinion. *Jones v. Albuquerque Police Dep't*, No. A-1-CA-35120, mem. op. (May 10, 2018) (nonprecedential). The Court of Appeals declined to reach Jones's argument that the district court was incorrect to find that the requested records were exempt from production under Section 14-2-1(A)(4). *Jones*, No. A-1-CA-35120, mem. op. ¶¶ 9, 13-14. The Court of Appeals offered two different reasons to affirm the district court. *Id.* ¶¶ 8-9. First, it held that because Jones did not object to the district court's order denying Jones's summary judgment motion, Jones acquiesced and failed to preserve any argument against the order. *Id.* ¶¶ 9, 14. This included Jones's argument that the requested records were wrongly withheld. *Id.* Second, the Court of Appeals held that the case was moot. *Id.* ¶ 15. The Court of Appeals seemed to reason that Jones no longer had an action for injunctive relief because Jones received the requested records, and could no longer succeed in an action for attorney fees because (1) the records were produced in accordance with the order of the district court, and (2) Jones could no longer challenge that the records were originally withheld in violation of IPRA. *Id.*

**{15}**   Jones filed a petition for a writ of certiorari, which we granted.

## II.   DISCUSSION

## A.   Standard of Review

**{16}**   Summary judgment is a drastic remedy that is disfavored in New Mexico courts. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d 280 (citing *Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 9, 90 N.M. 753, 568 P.2d 589). "Summary judgment is appropriate in the absence of any genuine issues of material fact and where the movant is entitled to judgment as a matter of law." *Cahn v. Berryman*, 2018-NMSC-002, ¶ 12, 408 P.3d 1012 (internal quotation marks and citation omitted). Orders granting or denying summary judgment are reviewed de novo. *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 9, 285 P.3d 644. "In reviewing an order on summary judgment, we examine the whole record on review, considering the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits." *Cahn*, 2018-NMSC-002, ¶ 12 (internal quotation marks and citation omitted).

**{17}**   "To the extent we must construe the applicable statutes, our review is de novo." *Romero v. Lovelace Health Sys., Inc.*, 2020-NMSC-001, ¶ 11, 455 P.3d 851. "We examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *State v. Armijo*, 2016-NMSC-021, ¶ 20, 375 P.3d 415 (brackets omitted) (internal quotation marks and citation omitted). We adhere to the plain meaning rule, which "requires that we give statutes effect as written without room

for construction unless the language is doubtful or ambiguous or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case we construe the statute according to its obvious spirit or reason." *Id.* (brackets and ellipsis omitted) (internal quotation marks and citation omitted). This case involves IPRA. "We construe IPRA in light of its purpose and interpret it to mean what the Legislature intended it to mean[] and to accomplish the ends sought to be accomplished by it." *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173 (internal quotation marks and citation omitted).

## B.    The IPRA Framework as It Pertains to This Case

**{18}**    As declared by our Legislature, the purpose of IPRA "is to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." NMSA 1978, 14-2-5 (1993); *see also Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 12, 283 P.3d 853 ("IPRA is intended to ensure that the public servants of New Mexico remain accountable to the people they serve." (internal quotation marks and citation omitted)). Accordingly, the general rule is that public records are subject to inspection upon request. *See* § 14-2-1(A) ("Every person has a right to inspect public records[.]"); NMSA 1978, § 14-2-8 (2009) (setting out the procedures for making an IPRA request); *Republican Party of N.M.*, 2012-NMSC-026, ¶ 12 ("The citizen's right to know is the rule and secrecy is the exception." (internal quotation marks and citation omitted)).

**{19}**    The Legislature has limited this general rule by providing seven specific exceptions and one "catch-all" exception to the right to inspect public records. *See* § 14-2-1(A)(1)-(8); *Republican Party of N.M.*, 2012-NMSC-026, ¶ 13 (referring to Section 14-2-1(A)(1)-(7) as specific exceptions and Section 14-2-1(A)(8) as a "catch-all" exception). Central to this case is Section 14-2-1(A)(4), which provides a specific exception for

> law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime. Law enforcement records include . . . inactive matters or closed investigations to the extent that they contain the information listed in this paragraph.

Also pertinent is Section 14-2-1(A)(8), the "catch-all" exception. Section 14-2-1(A)(8) provides an exception from inspection under IPRA "as otherwise provided by law." This Court has construed "as otherwise provided by law" to refer only to statutory or regulatory bars to disclosure, or privileges that are grounded in the constitution or adopted by this Court. *Republican Party of N.M.*, 2012-NMSC-026, ¶¶ 13, 16. In sum, our courts "should restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the constitution." *Id.* ¶ 16.

**{20}** The related goals of prompt and scrupulous compliance with IPRA are ingrained within the Act. *See Faber*, 2015-NMSC-015, ¶ 29 (considering the structure, history, and purpose of IPRA and concluding that distinct statutory provisions encourage prompt compliance and deter wrongful denials). For example, inspection of records pursuant to a written request shall be permitted "as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request." Section 14-2-8(D). When there is both exempt and nonexempt information contained in requested public records, the exempt and nonexempt information "shall be separated by the custodian prior to inspection, and the nonexempt information shall be made available for inspection." NMSA 1978, § 14-2-9(A) (2013). Several enforcement mechanisms provide remedies for noncompliance with IPRA. *See Faber*, 2015-NMSC-015, ¶ 12 ("[NMSA 1978,] Sections 14-2-11 [(1993)] and 14-2-12 [(1993)] create separate remedies depending on the stage of the IPRA request."). This case implicates Section 14-2-12, which provides, inter alia, that a person whose written request has been denied may bring a lawsuit to enforce IPRA and, if successful in such a court action, shall be entitled to "damages, costs and reasonable attorneys' fees."

**{21}** Below, we first address the two reasons that the Court of Appeals dismissed Jones's appeal, concluding that the appeal was wrongly dismissed. We then proceed to address the district court's interpretation of Section 14-2-1(A)(4), and its rulings on the summary judgment motions of DPS and Jones. We conclude that the district court's interpretation of Section 14-2-1(A)(4) was overbroad, which led the district court to improperly grant summary judgment to DPS and improperly deny summary judgment to Jones.

## C.   Jones Did Not Acquiesce to the Order Denying Jones's Summary Judgment Motion

**{22}** Jones challenges the Court of Appeals' conclusion that he could not appeal the ruling of the district court that Section 14-2-1(A)(4) exempted the requested records from inspection. Contrary to the holding of the Court of Appeals, Jones argues that he did not "acquiesce" to the order denying him summary judgment by failing to object to the district court's supplementary production procedures prescribed in that order by the district court.

**{23}** The order denying Jones's motion for summary judgment was interlocutory and nonfinal. *See Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 14, 113 N.M. 231, 824 P.2d 1033 ("The general rule in New Mexico . . . is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." (internal quotation marks and citation omitted)); *see also Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) (stating, in the context of federal law, that "[o]rdinarily, orders denying summary judgment do not qualify as final decisions subject to appeal" and "are by their terms interlocutory" (internal quotation marks and citation omitted)). Such an order is generally not immediately appealable. *See Handmaker v. Henney*, 1999-NMSC-043, ¶ 7, 128 N.M. 328, 992 P.2d 879 ("As a general matter, this Court's appellate jurisdiction is limited to

review of any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights." (internal quotation marks and citation omitted) (citing NMSA 1978, § 39-3-2 (1966)); *Doe v. Leach*, 1999-NMCA-117, ¶ 12, 128 N.M. 28, 988 P.2d 1252 ("In an ordinary lawsuit, denial of a motion for summary judgment is not appealable[.]").

**{24}**   As both parties note, Jones *could have* applied for discretionary remedies such as interlocutory review or reconsideration in response to the district court's order denying summary judgment. *See, e.g.*, NMSA 1978, § 39-3-4 (1999) (providing for interlocutory appeals from district court in civil cases under limited circumstances); Rule 12-203 NMRA (same). However, as a matter of civil procedure, we are not aware of any authority *requiring* him to have done so to preserve the issues addressed therein. Nor do our applicable principles favor such a requirement. *See Principal Mut. Life Ins. Co. v. Straus*, 1993-NMSC-058, ¶ 12, 116 N.M. 412, 863 P.2d 447 ("There is a strong policy in New Mexico of disfavoring piecemeal appeals and of avoiding fragmentation in the adjudication of related legal or factual issues." (citation omitted)); *Kelly Inn No. 102, Inc.*, 1992-NMSC-005, ¶ 27 ("New Mexico has [a] strong policy that courts should facilitate, rather than hinder, the right to appeal." (citing *Govich v. North American Sys., Inc.*, 1991-NMSC-061, ¶ 12, 112 N.M. 226, 814 P.2d 94)). We decline to conclude that it was mandatory in this case for Jones to apply for discretionary remedies from a nonfinal, interlocutory, ruling in order to preserve his argument that the requested records were improperly withheld.

**{25}**   We are also unpersuaded that, by acquiescence, Jones lost his argument that the records were wrongly withheld. Jones's position was that DPS failed to comply with IPRA when it denied inspection of the requested records in the first place. That position was considered and rejected by the district court when it addressed Jones's motion for summary judgment. In our view, the fact that Jones did not specifically object to the additional records production procedure devised by the district court while it clearly rejected Jones's position does not indicate Jones's acquiescence.

**{26}**   The three cases cited by the Court of Appeals on this point do not convince us otherwise. *See Jones*, No. A-1-CA-35120, mem. op. ¶ 12 (citing *N.M. Selling Co. v. Crescendo Corp.*, 1964-NMSC-180, 74 N.M. 409, 394 P.2d 260; *Quintana v. Quintana*, 1941-NMSC-038, 45 N.M. 429, 115 P.2d 1011; *Chase v. Contractors' Equipment & Supply Co., Inc.*, 1983-NMCA-058, 100 N.M. 39, 665 P.2d 301). These cases are about failures to preserve error, generally, not acquiescence as a distinct concept. *See, e.g.*, *Chase*, 1983-NMCA-058, ¶ 15 (declining to consider two issues because the issues were first raised on appeal). In fact, two of the three cases make no mention of the term "acquiescence." *See N.M. Selling Co.*, 1964-NMSC-180, ¶¶ 5-7; *Chase*, 1983-NMCA-058, ¶¶ 12-15. We conclude that Jones did not acquiesce to the order denying summary judgment; instead, we conclude that Jones invoked a ruling by the district court on whether the records were properly withheld. *See Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 9, 147 N.M. 512, 226 P.3d 611 ("To preserve a question for review it must

appear that a ruling or decision by the district court was fairly invoked[.]" (internal quotation marks and citation omitted)).

**{27}** DPS offers an alternative reason that the Court of Appeals was correct not to reach Jones's substantive arguments. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). DPS notes that Jones's notice of appeal referenced the district court's order granting summary judgment to DPS but did not reference the earlier order denying summary judgment to Jones that directly addressed Jones's substantive argument. *See* Rule 12-202(C) NMRA ("A copy of the judgment or order appealed from, showing the date of the judgment or order, shall be attached to the notice of appeal."). DPS seems to conclude that, as a consequence, Jones lost his opportunity to appeal the initial ruling on DPS's refusal to provide the requested records.

**{28}** We are not persuaded. The district court's order granting summary judgment to DPS explicitly relied on its earlier order ruling that DPS complied with IPRA and, furthermore, Jones opposed DPS's motion for summary judgment by renewing his earlier argument that DPS withheld the requested records in violation of IPRA. This is sufficient to infer that Jones intended to challenge the conclusions of the order denying Jones's motion for summary judgment and to avoid prejudice to DPS. *See Govich*, 1991-NMSC-061, ¶ 13 ("The policies in this state, and the purpose of [Rule 12-202], are vindicated if the intent to appeal a specific judgment fairly can be inferred from the notice of appeal and if the appellee is not prejudiced by any mistake."); Rule 12-312(C) NMRA ("An appeal filed within the time limits provided in these rules shall not be dismissed for technical violations of Rule 12-202 which do not affect the substantive rights of the parties.").

**{29}** In sum, we conclude that Jones did not acquiesce to the order denying his summary judgment motion but instead preserved his argument that DPS withheld the requested public records in violation of IPRA.

## D.     This Case Is Not Moot

**{30}** "When no actual controversy exists for which a ruling by the court will grant relief, an appeal is moot[.]" *Republican Party of N.M.*, 2012-NMSC-026, ¶ 10. "As a general rule, this Court does not decide moot cases." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008. However, we recognize two exceptions to this rule: "cases which present issues of substantial public interest, and cases which are capable of repetition yet evade review." *Republican Party of N.M.*, 2012-NMSC-026, ¶ 10 (internal quotation marks and citation omitted).

**{31}** The Court of Appeals held that this case was moot, seemingly sua sponte. *Jones*, No. A-1-CA-35120, mem. op. ¶ 15. Although the Court of Appeals was not

perfectly clear in its treatment of the mootness issue, its conclusion that the case was moot appears to rest on the following: (1) by the time of DPS's motion for summary judgment, Jones had received the records he requested; (2) Jones did not argue that DPS failed to comply with the records production procedure devised by the district court; and (3) its determination that Jones could no longer challenge the finding of the district court that DPS lawfully withheld the requested records. *Id.* ¶¶ 14-15. From this, the Court of Appeals held that the controversy over injunctive relief to obtain the records was moot because Jones accepted the requested records without objection. *Id.* ¶ 15. It also held that the controversy over attorney fees was moot because, even though Jones eventually acquired the withheld records, he could not succeed in his action to enforce IPRA. *Id.*

**{32}** We agree with the Court of Appeals that there was no remaining controversy over inspection of the requested records. After all, Jones obtained the requested records. But mootness was not the correct lens through which to analyze Jones's claim for attorney fees. We explain.

**{33}** Unlike the requested records—which Jones received—Jones had not received the attorney fees he requested as relief under Section 14-2-12(D), and he still sought them during the proceedings on DPS's motion for summary judgment. Thus, there remained an active controversy over attorney fees. However, under the Court of Appeals' holding that Jones could no longer challenge the district court's finding that the records were lawfully withheld, the Court of Appeals concluded that Jones was not entitled to attorney fees. *See* Section 14-2-12(D) (requiring a "successful" IPRA enforcement action for an award of attorney fees). In essence, the Court of Appeals determined not that Jones's claim for attorney fees was moot but that Jones was not entitled to attorney fees as a matter of law.

**{34}** We disagree with that conclusion. We have already determined that the Court of Appeals incorrectly denied Jones the opportunity to challenge the finding of the district court that the requested records were withheld in accordance with IPRA. Thus, we do not agree that Jones could not as a matter of law succeed in his IPRA enforcement action. We therefore conclude that the Court of Appeals incorrectly determined that this case should be dismissed because it is moot.

**E.      DPS Did Not Demonstrate That It Withheld the Requested Records in Accordance with IPRA; as a Result, Summary Judgment Should Have Been Granted to Jones, Not DPS**

**{35}** In response to DPS's summary judgment motion, Jones did not dispute that there were no genuine issues of material fact. Instead, he renewed his argument that, as a matter of law, the records were improperly withheld in the first place. In Jones's view, this precluded summary judgment because he would be entitled to attorney fees and costs for his IPRA enforcement action. The district court disagreed that the records had been improperly withheld. For that finding, the district court relied explicitly on its earlier order that the requested records "were exempt from disclosure pursuant to Section 14-

2-1(A)(4)." And in that earlier order on Jones's summary judgment motion, the district court found that an ongoing criminal investigation would exempt the requested records from inspection pursuant to Section 14-2-1(A)(4).

**{36}** Thus, both summary judgment motions turn on the same legal issue: whether the district court correctly construed Section 14-2-1(A)(4) as a broad exception from inspection for law enforcement records relating to an ongoing criminal investigation. We turn now to address that question, and then examine the district court's summary judgment rulings in light of our conclusion.

## 1. The district court misconstrued Section 14-2-1(A)(4)

**{37}** Nowhere does the plain language of Section 14-2-1(A)(4) exempt from IPRA inspection requirements all law enforcement records relating to an ongoing criminal investigation. *See Faber*, 2015-NMSC-015, ¶ 9 ("In discerning the Legislature's intent, . . . we look first to the plain language of the statute[.]" (brackets omitted) (internal quotation marks and citation omitted)). Rather, the plain language of Section 14-2-1(A)(4) indicates that the Legislature was not concerned with the stage of the investigation as such: "[L]aw enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime" are exempt, even if the law enforcement records relate to "*inactive matters or closed investigations* to the extent that [the law enforcement records] contain the information listed in this paragraph[.]" *Id.* (emphasis added). Contrary to the conclusion of the district court, the plain language of Section 14-2-1(A)(4) indicates that the ongoing FBI investigation was not, of itself, material to whether the requested records could be withheld pursuant to Section 14-2-1(A)(4).

**{38}** Instead of focusing on whether there was an ongoing investigation, our Legislature was concerned with the specific content of the records. Only "law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime" are exempt from the general IPRA inspection requirement under Section 14-2-1(A)(4). This is very different than the standard that DPS argued for, which was fixed on whether there was an ongoing investigation. Although the specific standard applied by the district court is not perfectly clear, the district court certainly did not apply the plain language of Section 14-2-1(A)(4). Instead, it seems to have required only that the requested records relate to an ongoing criminal investigation, or perhaps that inspection of the records would "interfere" with an ongoing investigation. Either standard is untethered from the plain language of Section 14-2-1(A)(4) and overbroad. *See Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 23, 147 N.M. 523, 226 P.3d 622 ("The primary indicator of the Legislature's intent is the plain language of the statute.").

**{39}** Examining Section 14-2-1(A)(4) in relation to Section 14-2-9(A) further dissuades us from adopting the view of the district court. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361 ("We also consider the statutory subsection in reference to the statute as a whole and read the

several sections together so that all parts are given effect."). Section 14-2-9(A) provides that requested law enforcement records containing both exempt and nonexempt information cannot be withheld in toto. Rather, Section 14-2-9(A) provides that when requested public records contain a mix of exempt and nonexempt information, the "exempt and nonexempt [information] . . . shall be separated by the custodian prior to inspection, and the nonexempt information shall be made available for inspection." Read together, the plain language of Sections 14-2-1(A) and 14-2-9(A) provide that DPS was required to review the requested law enforcement records, separate information that did not "reveal confidential sources, methods, information or individuals accused but not charged with a crime" from that which did, and provide the nonexempt information for inspection within fifteen days.[3] *See* § 14-2-8(D) ("A custodian receiving a written request shall permit the inspection immediately or as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request."). By contrast, and incorrectly, the district court allowed DPS to broadly withhold law enforcement records in toto because there was an ongoing criminal investigation.

**{40}** In sum, we conclude that the interpretation of the district court was overbroad and incongruent with the plain language of Section 14-2-1(A)(4). *See Dunn v. Brandt*, 2019-NMCA-061, ¶ 10, 450 P.3d 398 ("[T]he exceptions to IPRA's mandate of disclosure are narrowly drawn[.]").

### 2. Summary judgment was improperly granted to DPS and improperly denied to Jones

**{41}** The district court granted summary judgment to DPS because, inter alia, it determined that the records in this case were properly withheld pursuant to Section 14-2-1(A)(4) and therefore Jones could not be successful in his enforcement action. The evidence the district court relied on to establish that the records were properly withheld pursuant to Section 14-2-1(A)(4) was its earlier order denying summary judgment to Jones. Accordingly, we turn now to examine that earlier order, in particular to determine whether the district court was correct to find that the records were exempt from inspection pursuant to Section 14-2-1(A)(4).

**{42}** In response to Jones's summary judgment motion, DPS produced evidence directed only at its broad interpretation of Section 14-2-1(A)(4). DPS attached to its response one affidavit and one letter, both of which primarily established that there was an ongoing law enforcement investigation. DPS did not present evidence that any of the specific records that it refused to produce "reveal[ed] confidential sources, methods, information or individuals accused but not charged with a crime."[4] Section 14-2-1(A)(4).

---

[3] Section 14-2-1(D) (2019)—which is the amended version of Section 14-2-1(A)(4)—amplifies the requirements of Section 14-2-9(A). Section 14-2-1(D) specifically exempts only those "*portions*" of law enforcement records that meet certain criteria (which have been revised from the 2011 version). (Emphasis added.)

[4] Although DPS did at certain points argue that the requested records would reveal the identity of a person accused but not charged with a crime, it did not present evidence to that effect that the district court could have relied on. *See V.P. Clarence Co. v. Colgate*, 1993-NMSC-022, ¶ 2, 115 N.M. 471, 853 P.2d 722 ("[T]he briefs and

Nor did DPS present any evidence that it reviewed the requested records to separate the exempt from nonexempt information, or that it provided any nonexempt information existing within records containing exempt information, as required pursuant to Section 14-2-9(A). For these reasons, we conclude that the district court was incorrect to determine that the requested records were exempt from inspection pursuant to Section 14-2-1(A)(4).

**{43}** DPS offers three additional arguments that it acted in accordance with the law when it denied inspection of the records requested by Jones, each of which is unpersuasive. *See Vargas*, 2008-NMSC-019, ¶ 8 (explaining the right for any reason doctrine). First, DPS contends that it had a statutory duty pursuant to Section 29-3-3 to withhold the requested records once the FBI asked it to do so. Section 29-3-3 does indeed establish a duty to cooperate with federal law enforcement agencies such as the FBI.[5] We need not address the contours of that duty in this case because, as established by the letter attached to DPS's summary judgment response, the FBI asked only that DPS withhold information to the extent possible under IPRA. Given that the FBI subordinated its request to the requirements of IPRA, we conclude that Section 29-3-3 cannot justify DPS's refusal to produce the requested records in this case.

**{44}** Second, DPS seems to contend that the records were properly withheld pursuant to the "catch-all" exception from inspection, Section 14-2-1(A)(8). Section 14-2-1(A)(8) provides that public records are exempt from inspection under IPRA "as otherwise provided by law." DPS argues that this statute "creates an exception from disclosure from any source that has the force and effect of law[,]" that the order of the district court denying summary judgment to Jones "carried the force and effect of law[,]" and therefore DPS acted in accordance with IPRA when it withheld the requested records because it followed the order of the district court. We are not persuaded. This Court has already interpreted the "catch-all" provision, and district court orders do not fall within any of the "otherwise provided by law" categories. *See Republican Party of N.M.*, 2012-NMSC-026, ¶¶ 13,16 (including within the "catch-all" exception statutory or regulatory bars to disclosure, constitutionally mandated privileges, and privileges established by our rules of evidence). We reject the argument of DPS that the order of the district court qualifies as an exception "otherwise provided by law" as defined in Section 14-2-1(A)(8).

**{45}** Third, DPS argues that *Estate of Romero v. City of Santa Fe*, 2006-NMSC-028, 139 N.M. 671, 137 P.3d 611, supports the district court's broad interpretation of Section

---

arguments of counsel are not evidence upon which a trial court can rely in a summary judgment proceeding."); *see also Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 15, 139 N.M. 12, 127 P.3d 548 ("On summary judgment, the non-movant . . . must demonstrate genuine issues of material fact by way of sworn affidavits, depositions, and similar evidence.").

5Section 29-3-3 provides:

> It shall be the duty of the New Mexico state police and it is hereby granted the power to cooperate with agencies of other states and of the United States having similar powers to develop and carry on a complete interstate, national and international system of criminal identification and investigation, and also to furnish upon request any information in their possession concerning any person charged with crime to any court, district attorney or police officer or any peace officer of this state, or of any other state or the United States.

14-2-1(A)(4). In *Estate of Romero*, this Court recognized an "immunity from discovery for some police investigative materials in civil litigation" grounded in the "public policy concern" expressed by our Legislature in enacting Section 14-2-1(A)(4). *Estate of Romero*, 2006-NMSC-028, ¶¶ 17-19. Quoting *Estate of Romero*, DPS maintains that "[w]ithin IPRA the [L]egislature has expressed its intent to protect from disclosure police investigatory materials in an on-going criminal investigation." *Id.* ¶ 17. However, as noted in *Estate of Romero*, the protection from disclosure is not absolute. *See id.* ¶ 19 (stating that the immunity from discovery for law enforcement materials in the context of discovery "is not absolute"). With Section 14-2-1(A)(4), our Legislature addressed the public policy concerns related to IPRA requests for law enforcement records, and the language in Section 14-2-1(A)(4) specifically defines what information in law enforcement records can be withheld from inspection. *See Estate of Romero*, 2006-NMSC-028, ¶ 17 ("[T]he legislature describes the public policies of the state through statutes."); *see also* § 14-2-1(A)(4) (confining the exception for law enforcement records to "records that reveal confidential sources, methods, information or individuals accused but not charged with a crime"). *Estate of Romero* does not justify going beyond the plain language of Section 14-2-1(A)(4).

**{46}** For the reasons above, we hold that summary judgment was improperly granted to DPS. And, for the reasons below, we hold that summary judgment was improperly denied to Jones.

**{47}** Our appellate courts generally will not reopen denials of summary judgment after a final judgment on the merits. *Beaudry v. Farmers Ins. Exch.*, 2018-NMSC-012, ¶ 9, 412 P.3d 1100. However, where "a motion for summary judgment is based solely on a purely legal issue which cannot be submitted to the trier of fact, . . . the resolution of which is not dependent on evidence submitted to the trier of fact, the issue should be reviewable on appeal from the judgment." *Id.* (omission in original) (internal quotation marks and citation omitted). Such is the situation here. Following the denial of Jones's summary judgment motion, there was no trial that further developed the facts and resulted in a judgment. Instead, DPS filed a summary judgment motion that turned on the same legal issue as the order denying summary judgment to Jones, and in fact relied upon that order. Thus, the summary judgment motions in this case are akin to counter-motions for summary judgment that turn on the same legal issue. Accordingly, we will review the order denying summary judgment to Jones. *See Int'l Ass'n of Firefighters v. City of Carlsbad*, 2009-NMCA-097, ¶ 22, 147 N.M. 6, 216 P.3d 256 ("When the district court acts on counter-motions for summary judgment based on a common legal issue, [our appellate courts] may reverse both the grant of one motion and the denial of the other and award judgment on the previously denied motion.").

**{48}** Jones established a prima facie case for summary judgment. As a matter of law, public records are generally subject to inspection within fifteen days after written request unless the records meet one of the established IPRA exceptions. *See* § 14-2-8(D) (providing that inspection pursuant to a written request shall be permitted "as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request"); *Republican Party of N.M.*, 2012-NMSC-026, ¶¶ 12, 13, 16 (stating that

the right to inspect public records is limited only by the exceptions created by the Legislature); *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶ 35, 90 N.M. 790, 568 P.2d 1236 ("The burden is upon the custodian to justify why the records sought to be examined should not be furnished."), *overruled on other grounds by Republican Party*, 2012-NMSC-026, ¶¶ 14-16. No question was raised in this case about whether the requested records met the definition of public records or about the validity of Jones's written request.

**{49}** Thus, the burden fell on DPS to demonstrate that one of the IPRA exceptions from inspection covered the withheld records. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 16, 416 P.3d 264 ("If the moving party establishes a prima facie case, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)). Our earlier analysis demonstrates that DPS did not present any competent evidence that established a genuine issue of material fact as to whether DPS lawfully denied inspection of the requested records. Rather, the only evidence presented by DPS was directed at an overbroad standard for Section 14-2-1(A)(4) that we have rejected as inconsistent with the plain language of the statute. Accordingly, we reverse the district court's denial of summary judgment to Jones.

**CONCLUSION**

**{50}** For the reasons stated, we reverse the Court of Appeals, the decision of the district court granting summary judgment to DPS, and the decision of the district court denying summary judgment to Jones. We remand for further proceedings.

**{51}  IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**DONNA J. MOWRER, Judge**
**Sitting by designation**