The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>June 30, 2023</u>

**No. A-1-CA-39549**

**NANCY HENRY,**

      Plaintiff-Appellant,

v.

**JULIE GAUMAN, Records**
**Custodian for the New Mexico**
**Livestock Board,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Court Judge**

Harrison & Hart, LLC
Daniel J. Gallegos
Nicholas T. Hart
Ramón Soto
Albuquerque, NM

for Appellant

Hatcher Law Group, P.A.
Scott P. Hatcher
Robert A. Corchine
Carl J. Waldhart
Santa Fe, NM

for Appellee

**OPINION**

**YOHALEM, Judge.**

{1}     This appeal is brought under New Mexico's Inspection of Public Records Act (IPRA), NMSA 1978, Sections 14-2-1 to -12 (1947, as amended through 2023). Plaintiff Nancy Henry appeals the district court's order denying her petition to compel the records custodian for the New Mexico Livestock Board (the Board) to make available for inspection an investigative report (the Whetham Report) concerning the conduct of livestock inspector Kenneth Whetham, a Board employee. Henry claims on appeal that the district court erred in concluding that the Whetham Report in its entirety is exempt from disclosure under Section 14-2-1(C) of IPRA, the exemption for "letters or memoranda that are matters of opinion in personnel files." We agree with the district court that the entire report is exempt from disclosure and that, under the circumstances of this case, in camera review of the report by the district court was unnecessary. Concluding that IPRA was correctly applied and is determinative of the result we reach, we do not consider Henry's argument concerning Rule 1.7.1.12(C) NMAC.

**BACKGROUND**

{2}     In 2018, Henry filed a complaint with the Office of the State Auditor (OSA) alleging that Whetham, who was employed by the Board as a livestock inspector (a law enforcement position), had engaged in timesheet fraud by billing the Board for

his time while working at a second job. The OSA investigated Henry's complaint pursuant to the Audit Act, NMSA 1978, Sections 12-6-1 through -15 (1969, as amended through 2019). The Audit Act authorizes the OSA to investigate the financial affairs of state agencies. *See* § 12-6-3. The OSA, in written findings (the OSA Report), identified forty instances where auditors found that Whetham had been paid by the State while working at an unapproved second job. Inspection of the OSA Report under IPRA is not at issue in this case: it is undisputed that Henry had access to this report.

{3}    The OSA sent a letter to the Board informing the Board of its findings. Upon receipt of the OSA letter, the Board retained an outside firm, Thompson & Associates Investigative Services, Inc., to interview Board employees, including livestock inspector Whetham, and to investigate any violation by Whetham of the State's or the Board's rules of conduct for employees. The purpose of the investigation was to determine whether the Board's rules on the billing of time had been violated, to investigate Whetham's general job performance and compliance with the Board's rules of conduct, and to advise the Board on whether disciplinary action should be taken. A letter to Whetham from the Board at the start of the investigation informed him that "the interview and investigation may form the basis of disciplinary action if it reveals that you have engaged in any behavior that is

2

inconsistent with your obligation to the agency and the State of New Mexico and/or contrary to the agency's best interests."

{4} In 2019, after the investigation by Thompson & Associates had been completed, Henry sent an IPRA request to the Board's custodian of records, Julie Gauman, asking, in relevant part, for a copy of "the Investigation Report[] pertaining to . . . Kenneth Whetham."

{5} The Board denied Henry's request for inspection and copying of the Whetham Report stating, in relevant part: "We cannot permit inspection of the investigation report for Kenneth Whetham . . . because it is confidential and exempted from disclosure under [Section] 14-2-1(C)." The response identified the report as "records and documentation containing matters of opinion and documents concerning infractions and disciplinary actions," placed in an officer's personnel file.

{6} Henry filed a complaint in district court seeking a writ of mandamus or a court order compelling the Board to produce the Whetham Report. Both parties filed motions for summary judgment and responses. Prior to the district court's resolution of the parties' cross-motions for summary judgment, Henry served a third-party subpoena on Thompson & Associates seeking a copy of the Whetham Report. Henry also served discovery on the Board and included a request for production of the Whetham Report, as well as for production of communications and notes compiled

during the Board's investigation of Whetham. The Board moved to quash the subpoena and the production request.

{7}    Following a hearing on the pending motions, the district court granted the Board's motion for summary judgment and denied Henry's cross-motion for summary judgment. The district court found that "[t]he undisputed evidence shows that the Whetham Report 'concerns' a potential disciplinary action against Whetham, [an employee of the Board]," and concluded, "[t]hat evidence is sufficient to shield the Whetham Report from disclosure" under IPRA Section 14-2-1(C).

{8}    The district court also granted the Board's motion to quash Henry's subpoena and her request for production of documents, finding that examination of the report by either Henry's counsel or by the district court in camera review was unnecessary and "immaterial to this [c]ourt's determination of whether the Whetham Report is exempt from disclosure under . . . IPRA." This appeal followed.

**DISCUSSION**

**I.    "Letters or Memoranda That Are Matters of Opinion in Personnel Files" Are Exempt From Inspection in Their Entirety Under IPRA Section 14-2-1(C)**

{9}    Henry argues that the Board's custodian of records was required to divide the Whetham Report into "factual matters concerning misconduct by a public officer related to that officer's role as a public servant" and "'matters of opinion' constituting personnel information" related to the officer's role as an employee.

4

Henry agrees that the "matters of opinion" concerning discipline are exempt from disclosure under IPRA Section 14-2-1(C) but claims that "factual matters" must be disclosed. We do not agree. Henry's argument is based on a common misreading of both the IPRA statutory language and longstanding appellate precedent from our Supreme Court and this Court construing this exemption. We explain.

{10} Whether our Legislature intended the exemption in Section 14-2-1(C) to require the custodian of records to separate a single document concerning the discipline of an employee into "matters of fact" and "matters of opinion" raises a question of statutory interpretation, which we review de novo. *See Dunn v. N.M. Dep't of Game & Fish*, 2020-NMCA-026, ¶ 3, 464 P.3d 129 (noting that this Court reviews de novo disputes that require us to "construe the statute and apply the relevant case law to undisputed facts"). The primary goal in interpreting a statute is to give effect to the Legislature's intent. *Id.* ¶ 8. We begin the search for legislative intent by looking "first to the words chosen by the Legislature and the plain meaning of the Legislature's language." *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (internal quotation marks and citation omitted). "The application of the plain meaning rule does not, however, end with a formalistic and mechanistic interpretation of statutory language." *Id.* When the statutory language is "doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction," we construe the statute "according to its obvious spirit

or reason." *State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citation omitted). When there is precedent construing statutory language to guide us, we rely on that precedent. *See D.W. v. B.C.*, 2022-NMCA-006, ¶ 18, 504 P.3d 559 (noting that our statutory analysis is guided by prior appellate opinions construing the same statute).

{11} IPRA Section 14-2-1(C) states as follows:

> Every person has a right to inspect public records of this state except:
>
> . . . .
>
> C.  letters or memoranda that are matters of opinion in personnel files or students' cumulative files.

{12} Henry claims her argument that "matters of opinion" must be separated from "matters of fact" is rooted in the plain language of Section 14-2-1(C). Henry's argument, however, is dependent on isolating the phrase "matters of opinion" from the language of the longer phrase in which it is contained. That longer phrase identifies "letters or memoranda that are matters of opinion." Section 14-2-1(C). Our Supreme Court in *State v. Vest*, recently addressed the importance of looking to the meaning of the full phrase used by the Legislature when construing statutory language. *See* 2021-NMSC-020, ¶ 18, 488 P.3d 626 (concluding that it was error to focus on a single word in our aggravated fleeing statute and to ignore the meaning of the phrase as a whole). As in *Vest*, the words identified by Henry do not stand alone. Artificially singling out the words "matters of opinion" risks removing all

meaning from the larger phrase, rendering the additional words superfluous. *See id.* ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

{13}     Looking then to the language of the exemption as an integrated whole, we note that the subject of the exemption is not "opinion" or even "matters of opinion"; the subject of the exemption is "letters or memoranda." *See* Section 14-2-1(C). The language that follows "letters or memoranda" modifies the subject, describing the type of letters or memoranda that are exempt: those "that are matters of opinion in personnel files." *Id.* The exemption does not state, as it easily could, that "matters of opinion contained in a letter or memorandum" are exempt, nor does it say "portions of letters or memoranda that are matters of opinion" are exempt. Thus, the plain language of the section does not support Henry's claim that the Legislature intended to exempt only the portions of the documents at issue that "contain" opinions.

{14}     We turn next to our Supreme Court's construction of the language of this exemption in *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶ 12, 90 N.M. 790, 568 P.2d 1236, *superseded by statute as stated in Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853. Consistent with the plain language of the exemption, our Supreme Court in *Newsome* describes the exemption as applying to letters or memoranda in their entirety. *Newsome* holds that the Legislature intended the "letters or memorandums which are matters of opinion"

in personnel files exemption to apply to "documents concerning disciplinary action and promotions," characterizing these documents as a whole as "opinion information." *Id.* ¶ 12. Our Supreme Court in *Newsome* further notes that the Legislature recognized that this opinion information "might have no foundation in fact but, if released for public view, could be seriously damaging to an employee." *Id.*

{15}   In *Cox v. New Mexico Department of Public Safety*, 2010-NMCA-096, ¶¶ 20, 21, 148 N.M. 934, 242 P.3d 501, this Court considered the IPRA exemption for "letters and memoranda that are matters of opinion in personnel files." Relying on *Newsome*, we concluded that our Legislature intended to exempt from disclosure documents "regarding the employer/employee relationship, such as internal evaluations; disciplinary reports or documentation; promotion, demotion, or termination information; or performance assessments." *Id.* ¶ 21. The purpose of the exemption, according to *Cox*, is to protect the employer/employee relationship from disclosure of any "letters or memoranda" that are "generated by an employer or employee in support of the working relationship between them." *Id.* ¶ 22; *see Hall v. City of Carlsbad*, ___-NMCA-___, ¶ 10, ___ P.3d ___ (A-1-CA-37402, Mar. 31, 2023) (noting, consistently with the holdings of *Newsome* and *Cox*, that "[w]hen a law enforcement officer's employer performs an internal affairs investigation to investigate violations of the officer's terms of employment for the purpose of

determining whether infractions occurred and whether disciplinary action should be taken, *documents and reports* prepared in furtherance of the investigation fall squarely within this exemption" (emphasis added)).

{16} Instead of relying on the description in *Newsome*, *Cox*, and *Hall*, regarding the documents the Legislature intended to protect, Henry turns to the distinction this Court draws in *Cox* between a citizen's complaint about the conduct of a law enforcement officer, which *Cox* holds is not exempt from inspection, and a disciplinary report prepared by the officer's employer, which *Cox* holds is exempt under Section 14-2-1(C). *See Cox*, 2010-NMCA-096, ¶ 24. Henry claims that the citizen complaint is not exempt under IPRA because it is a factual matter "related to an officer's conduct while performing his duties as a public official[,]" rather than a "matter [of opinion] related to the officer's role as an employee."

{17} Henry misconstrues the basis for the distinction made in *Cox*. This Court distinguishes citizen complaints from a disciplinary report prepared by an employer based on the purpose of the exemption: to protect the confidentiality of the employer/employee relationship by prohibiting disclosure of "letters or memoranda" that are "generated by an employer or employee in support of the working relationship between them." *Id.* ¶ 22. In other words, a "memorand[um] that might contain [agency] opinions (in its capacity as the officer's employer)" is exempt from

disclosure. *Id.* ¶ 24. A citizen complaint, even one that may ultimately result in disciplinary action, is not exempt.[1]

**II. Section 14-2-9(A) Does Not Require the Custodian of Records to Separate Fact From Opinion; a Disciplinary Report Is a Memorandum Exempt in Its Entirety**

**{18}** Henry's next argument relies on IPRA Section 14-2-9(A). Henry claims that, even if Section 14-2-1(C) applies to "letters or memoranda" in their entirety, Section 14-2-9(A) requires the Board to separate "matters of fact" from "matters of opinion," and produce the matters of fact for inspection. We are not persuaded that Section 14-2-9(A) provides an alternative basis to require the custodian of records to separate fact from opinion.

**{19}** Section 14-2-9(A) states, in relevant part:

> Requested public records containing information that is exempt and nonexempt from disclosure shall be separated by the custodian prior to inspection, and the nonexempt information shall be made available for inspection.

We do not read this statutory language in isolation from the language of the exemptions found in the same statute, as Henry suggests we should. In construing statutory language, "[w]e read [a] statute as a whole, construing each section or part in connection with every other part or section so as to produce a harmonious whole."

---

[1]In this case, the documents analogous to the citizen complaint in *Cox* are Henry's complaint to the OSA and the OSA report, neither of which were prepared by Whetham's employer as part of an employment relationship. Henry was not denied either a copy of her own complaint or the OSA report.

*State v. Muller*, 2022-NMCA-024, ¶ 13, 508 P.3d 960 (alteration, internal quotation marks, and citation omitted). Applying this principle, we will not construe Section 14-2-9(A) to conflict with the intent expressed by our Legislature as to the scope of each of the exemptions. Where, as is the case here, there is a construction of Section 14-2-9(A) consistent with the Legislature's intent to exempt from disclosure the entirety of a document regarding disciplinary infractions prepared by an employer, we adopt that construction.

{20}     Section 14-2-9(A), by its plain language, requires an agency's custodian of records to separate exempt from nonexempt records when responding to an IPRA request. *See* § 14-2-9(A). The section does not define or describe the documents or information that is exempt, leaving that to Section 14-2-1. When an exemption applies to a document as a whole, as Section 14-2-1(C) does, Section 14-2-9(A) requires the custodian of records to separate exempt documents from nonexempt documents. When an exemption applies only to certain portions of a document or certain types of information within a document, then separating the exempt from nonexempt material demands redaction of the exempt material. *See Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶ 39, 470 P.3d 252 (considering Section 14-2-1(D) together with Section 14-2-9(A), and holding that in the case of law enforcement records, where the exemption specifies that only certain information is exempt, the custodian of records cannot withhold requested

11

documents in toto but must instead separate the exempt and nonexempt information prior to inspection). The Supreme Court explained that Section 14-2-1(D) "specifically exempts only those '*portions*' of law enforcement records that meet certain criteria." *Id.* ¶ 39 n.3. Because Section 14-2-1(C) of IPRA describes entire "letter[] or memorand[um]" as exempt, the custodian is required only to separate exempt from nonexempt documents, and make the latter available for inspection. This process respects the Legislature's exemption of the entire Whetham Report.

### III. The District Court Did Not Abuse Its Discretion in Quashing Henry's Subpoena and Discovery Requests and Denying In Camera Review

{21} "We review a district court's discovery orders for an abuse of discretion." *Villalobos v. Bd. of Cnty. Comm'rs*, 2014-NMCA-044, ¶ 14, 322 P.3d 439. We are not persuaded by Henry's argument that the district court abused its discretion in denying Henry's IPRA request for a copy of the Whetham Report without either discovery or in camera review.

{22} Henry argues that the district court was required to allow discovery of the Whetham Report or to review the Whetham Report in camera to determine if the document contains "matters of fact" that can be separated from "matters of opinion." Having concluded that no such separation is contemplated by either Section 14-2-1(C) or Section 14-2-9(A) of IPRA, we agree with the district court that neither discovery nor in camera inspection was required to resolve the dispute in this case. The facts included in the Board's response to Henry's request and the subsequent

affidavits submitted by the Board to the district court as part of the summary judgment process were undisputed. The undisputed evidence in the summary judgment record established that the Whetham Report "concerns" a potential disciplinary matter against Whetham. We agree with the district court that this evidence is sufficient to shield the Whetham Report from disclosure and that neither discovery nor in camera inspection was necessary to the resolution of this dispute. *See ACLU of N.M. v. Duran*, 2016-NMCA-063, ¶ 45, 392 P.3d 181 (providing that "[*w*]*here appropriate*, courts should conduct an in camera review of the documents at issue" when determining if documents are responsive or if privilege applies under IPRA (emphasis added) (internal quotation marks and citation omitted)).

{23} We caution, however, that in camera inspection is not always unnecessary when an agency claims a document is exempt under Section 14-2-1(C). An agency may not shield documents that are not exempt from disclosure by attaching them to an exempt disciplinary report or by placing them in a disciplinary file. Just as this Court has held that a document cannot be shielded from disclosure by placing it in a personnel file, *see Cox*, 2010-NMCA-096, ¶ 21, attaching a nonexempt document to a disciplinary report or placing it in a disciplinary file does not shield the document from disclosure under IPRA. In camera inspection may be required if an agency attempts to shield documents without adequately identifying their content or without identifying nonexempt attachments.

**CONCLUSION**

{24}    For the reasons stated, we affirm.

{25}   **IT IS SO ORDERED.**

_____

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____

**JACQUELINE R. MEDINA, Judge**

_____

**GERALD E. BACA, Judge**