The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: May 28, 2026

**NO. S-1-SC-40671**

**ALBUQUERQUE JOURNAL and**
**KOB-TV, LLC,**

　　　Plaintiffs-Petitioners,

v.

**BOARD OF EDUCATION OF ALBUQUERQUE**
**PUBLIC SCHOOLS and RIGO CHAVEZ, in his**
**capacity as Custodian of Records for Board**
**of Education for Albuquerque Public Schools,**

　　　Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Nancy J. Franchini, District Judge**

Peifer, Hanson, Mullins & Baker, PA
Charles R. Peifer
Gregory P. Williams
Matthew E. Jackson
Albuquerque, NM

for Petitioners

Ortiz & Zamora Attorneys at Law, LLC
Tony F. Ortiz
Jessica R. Terrazas
Santa Fe, NM

for Respondents
Law Office of Daniel Yohalem
Daniel Yohalem
Santa Fe, NM

for Amici Curiae New Mexico Foundation for Open Government, The Santa Fe New Mexican, El Rito Media LLC & American Civil Liberties Union of New Mexico

Amanda Lavin
Albuquerque, NM

for Amicus Curiae New Mexico Foundation for Open Government

**OPINION**

**ZAMORA, Justice.**

{1}     "Our democratic system of government necessarily assumes the existence of an informed citizenry. Without some protection for the acquisition of information about the operation of public institutions the process of self-governance contemplated by the Framers would be stripped of its substance." *Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 1, 283 P.3d 853 (text only)[1] (citation omitted). These fundamental protections are guaranteed to our citizens by New Mexico's Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2025). "IPRA creates a presumption in favor of access [to public records]" to help ensure that "our citizens [are] able to know what their own public servants are doing in their name." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 15-16, 150 N.M. 64, 257 P.3d 884. This presumptive right "is limited only by the Legislature's enumeration of certain categories of records that are excepted from inspection" under IPRA. *Republican Party of N.M.*, 2012-NMSC-026, ¶ 13.

---

[1]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

{2} This appeal calls on us to determine the intended meaning and scope of two of IPRA's exceptions from inspection, specifically: "letters or memoranda that are matters of opinion in personnel files," § 14-2-1(C), and "attorney-client privileged information," § 14-2-1(G). The centerpiece of this appeal is a long-sealed investigative report (the Padilla Report) prepared by outside counsel, Agnes Fuentevilla Padilla, Esq. (Attorney Padilla), for Defendant Board of Education of Albuquerque Public Schools (APS). *See Albuquerque J. v. Bd. of Educ. of Albuquerque Pub. Schs.* (*Albuquerque J. II*), 2025-NMCA-020, ¶¶ 1, 3, 576 P.3d 367. The two Plaintiffs—the Albuquerque Journal and KOB-TV, LLC—request access to inspect the report. *See id.* ¶ 1. The district court and the Court of Appeals held that the Padilla Report was excepted from inspection and denied Plaintiffs access. *Id.* ¶ 31.

{3} We granted certiorari and reverse the Court of Appeals as well as the decision of the district court. In doing so, we hold that (1) because the purpose of the Padilla Report was not primarily to provide legal advice, the attorney-client privilege exception does not apply here, and (2) the matters-of-opinion exception does not preclude inspection of the purely factual, nonopinion portions of the Padilla Report. We also hold that the Padilla Report is not wholly exempt from public inspection if it contains both exempt and nonexempt information under the matters-of-opinion

exception in Section 14-2-1(C). Instead, Section 14-2-9(A) requires exempt information to be separated and removed or redacted and "nonexempt information [to] be made available for inspection." We abrogate recent Court of Appeals opinions that have held otherwise. *See Henry v. Gauman*, 2023-NMCA-078, ¶¶ 18-20, 536 P.3d 498 ("When an exemption applies to a document as a whole, *as Section 14-2-1(C) does*, Section 14-2-9(A) requires the custodian of records to separate exempt documents from nonexempt documents." (emphasis added)); *Energy Pol'y Advocs. v. Balderas*, 2024-NMCA-081, ¶ 16, 560 P.3d 37 (citing *Henry*, 2023-NMCA-078, ¶ 20).

## I.    BACKGROUND

{4}    This IPRA enforcement action stems from "the abrupt and premature resignation" of APS Superintendent Winston Brooks in 2014, and the $350,000 publicly funded buyout of Brooks's contract by the APS Board of Education. *See Albuquerque J. II*, 2025-NMCA-020, ¶ 1. Although Brooks's resignation and the resulting settlement agreement with APS generated considerable media interest at the time, the agreement by its terms "contained no discussion of the reasons underlying the decision to prematurely terminate" Brooks's contract with APS, instead providing that "'[n]othing in this [a]greement or in its execution admits wrongdoing of any kind by either party' and that the agreement was 'mutually

entered for the benefit of each party.'" *See Albuquerque J. v. Bd. of Educ. of Albuquerque Pub. Schs.* (*Albuquerque J. I*), 2019-NMCA-012, ¶ 4, 436 P.3d 1 (alterations in original). Plaintiffs sought to uncover the reasons for the settlement agreement by filing multiple IPRA requests, many of which sought documents that Defendants withheld from their IPRA responses based on the attorney-client privilege and matters-of-opinion exceptions identified above. *Id.* ¶ 5.

{5}     The document at the center of this controversy is the Padilla Report. Attorney Padilla was hired as outside counsel in July 2014 by then APS Board President, Dr. Analee Maestas, by way of a brief engagement letter. The hiring terms of that agreement were vague. Attorney Padilla agreed to provide "professional legal services to the Board," which included but were not limited to "research and inquiry into matters of concern to the Board and consultation with the Board President and members of the Board concerning the results of [the investigation]." Also bearing on the purpose of the Padilla Report was "Maestas's verbal statement at a [closed] board meeting indicating that she sought counsel 'to provide the Board with factual information' and 'clear [Brooks] of these accusations once and for all.'" *Albuquerque J. II*, 2025-NMCA-020, ¶ 12 (second alteration in original). Both Attorney Padilla and Dr. Maestas submitted affidavits to the district court indicating their mutual understanding that the communications related to Attorney Padilla's

hiring—as well as the Padilla Report itself—were intended to be confidential and privileged.

## II. THE CONTENTS OF THE PADILLA REPORT

{6}      We have examined the contents of the Padilla Report to resolve the questions surrounding the applicability of the two IPRA exceptions at issue here.[2] The report, formally titled "Preliminary Inquiry Superintendent Winston Brooks" and bearing a "Confidential Attorney Client Privilege" stamp, was directed to "Dr. Analee Maestas, Board President" individually. The report is twelve pages long and contains seven distinct sections: (I) Description of Allegation, (II) Applicable Policies, (III) Witnesses, (IV) Inquiry Findings, (VI) [*sic*] Additional Information, (VI) Conclusion, and (VII) Exhibits and Evidence. Three of the identified sections are a single paragraph, while three others—including the Conclusion—do not exceed a

---

[2]This Court's description of the contents of the Padilla Report is necessarily restricted by the report's sealed status. *See* Rule 12-314(H) NMRA ("Court records sealed in the district . . . court that are filed in the appellate courts shall remain sealed in the appellate courts. The appellate court judges and staff may have access to the sealed court records unless otherwise ordered by the appellate court."). We confine our discussion of the contents of the Padilla Report to its format, structure, and headings, omitting any direct reference to potentially confidential substantive information addressed in the report. The goal of this approach is to enable readers to "know what the suit is about or assess the [Court's] disposition of it . . . without jeopardizing any legitimate interest" such as a party's privilege. *See generally Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 546 (7th Cir. 2002).

half-page each. The remaining eight-and-a-half pages of the report are devoted to the factual findings of the investigation under the "Inquiry Findings" heading. In the report Attorney Padilla notes that she personally interviewed Brooks, in addition to seven other persons—all present or former APS employees or Board members—"to develop facts for this report."

{7} Beyond the factual results of the investigation, the Padilla Report was short on advice—legal or otherwise—on how best to address the workplace problems being investigated. Indeed, the advice offered in the report was confined to a few vague suggestions, including that APS may choose to renew its commitment to provide a "pleasant and professional" work environment and should determine how best to "prevent future" similar workplace problems from arising. Notably, the report does not contain any meaningful discussion of the potential legal risks or liabilities faced by APS, or any reference to legal precedents or principles that may have been implicated by the workplace problems faced by the Board.

### III.  ANALYSIS

{8} Plaintiffs appeal from the district court's grant of Defendant's motion for summary judgment and denial of Plaintiffs' motion for partial summary judgment, both raising the proper application of the attorney-client privilege and the matters-of-opinion exceptions to IPRA. *See* § 14-2-1(G) and (C). The outcome of this appeal

hinges on the applicability of the two IPRA exceptions invoked by APS. After laying out the governing standard of review, we consider the two exceptions in turn, discussing first the attorney-client privileged information exception, and then addressing the matters-of-opinion exception.

**A.      Standard of Review**

{9}      "Summary judgment is a drastic remedy that is disfavored in New Mexico courts," and it is warranted only where there are no "genuine issues of material fact and where the movant is entitled to judgment as a matter of law." *Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶ 16, 470 P.3d 252 (internal quotation marks and citation omitted). "Orders granting or denying summary judgment are reviewed de novo." *Id.* "In reviewing an order on summary judgment, we examine the whole record on review, considering the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits." *Id.* (internal quotation marks and citation omitted). To the extent we must consider relevant statutes, our review is also de novo, *id.* ¶ 17, as is our review of the application of a privilege, *see Republican Party of N.M.*, 2012-NMSC-026, ¶ 11.

**B.      The Padilla Report Is Not Subject to the Attorney-Client Privileged Information Exception in Section 14-2-1(G)**

{10}      Plaintiffs argue that the Padilla Report is not exempt from inspection under IPRA's attorney-client privileged information exception. We agree.

{11}    IPRA's attorney-client privileged information exception applies only to documents that are subject to attorney-client privilege under Rule 11-503 NMRA. Rule 11-503 delineates the scope of the attorney-client privilege in New Mexico and provides, "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B). The elements of our attorney-client privilege "are (1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14, 143 N.M. 215, 175 P.3d 309. The party "asserting the attorney-client privilege bears the burden of demonstrating that the privilege applies." *Allen v. LeMaster*, 2012-NMSC-001, ¶ 38, 267 P.3d 806.

{12}    Although the term "professional legal services" is not defined in Rule 11-503, the Court of Appeals, in *Bhandari v. Artesia General Hospital*, held that the attorney-client privilege "protects communications generated or received by an attorney giving legal advice but does not protect communications derived from an attorney giving business advice or acting in some other capacity." 2014-NMCA-018, ¶ 12, 317 P.3d 856 (internal quotation marks and citation omitted) (noting that

attorneys "also provide non-legal services, such as negotiating contracts, analyzing potential . . . transactions, and investigating potential claims" (internal quotation marks and citation omitted)). To determine whether a given communication is privileged, the *Bhandari* Court adopted a primary purpose test, under which a communication between attorney and client is presumptively privileged if its primary purpose is to render or solicit legal advice. *Id.* ¶¶ 16-18. The Court further held, by contrast, that "'communications regarding business matters, management decisions, and business advice, which neither solicit or predominantly deliver legal advice, are not privileged.'" *Id.* ¶ 17 (quoting *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007)).

{13}    The principles adopted by the *Bhandari* Court are closely aligned with those advanced by commentators in this area. *See generally* 1 Paul R. Rice, *Attorney-Client Privilege in the United States*, § 7:6, at 1321 (2020-21 ed.) (Thomson Reuters) ("[T]here is general agreement that the protection of the [attorney-client] privilege applies only if the *primary* or *predominant purpose* of the attorney-client consultation is to seek legal advice or assistance."). Relevant here, "Factual investigations by themselves do not constitute the rendering of legal advice or assistance. . . . Legal advice or assistance must be the purpose behind the investigation, and since the privilege is designed to protect client confidences, the

communications with the attorney must be from either the client or the client's agents and proven to be confidential." *Id.* § 7:17, at 1385-90. "[T]he privilege should only apply where the investigation is one that cannot be carried on by non-lawyer investigators[,] e.g., where the matters to be investigated are legal documents whose meaning would not be apparent without legal training." 24 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure*, § 5478, at 229 (1986) (explaining "that investigative work is not 'professional legal services' and that no [attorney-client] privilege applies where the lawyer's primary function is as a detective").

{14}     "[A]s a general matter, attorneys provide legal advice when they draw on their legal training and apply legal principles to the specific circumstances of their client." *See In re Polaris, Inc.*, 967 N.W.2d 397, 410 (Minn. 2021); *see also Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct. for City & Cnty. of Denver*, 718 P.2d 1044, 1048-49 (Colo. 1986) (en banc) (holding that the lengthy facts section of a memorandum prepared by an attorney investigating the issuance of a lease guaranty insurance policy did not fall within the attorney-client privilege because the attorney's actions in "conducting interviews with various officers and employees for the purpose of determining the factual circumstances underlying the issuance of the policy" meant that "the attorneys were acting more in the role of claims investigators

than legal counsel"). By contrast, the Padilla Report is predominantly investigative in nature, mostly factual in content, and contains very little advice of any kind, none of which could fairly be considered legal advice. At best, the vague and generalized suggestions offered in the Padilla Report—that APS may wish to renew its commitment to provide a "pleasant and professional" workplace and should decide for itself how best to "prevent future" similar workplace problems—could be considered advice relating to "business matters [or] management decisions." *Bhandari*, 2014-NMCA-018, ¶ 17 (internal quotation marks and citation omitted). These suggestions to APS certainly are not legal advice or strategy.

{15}     In addition, the affidavits and confirming letter submitted by Attorney Padilla and Dr. Maestas reflecting both affiants' professed beliefs that Attorney Padilla was "providing professional legal services to the Board of Education of the [APS]" were also insufficient to show that the attorney-client privilege attaches to any portion of the Padilla Report. To rule otherwise and give controlling effect to the mindsets of the parties to the hiring agreement would run counter to New Mexico law. Whether a communication is privileged is determined by the court, not by the parties' subjective beliefs. *See Bujac v. Wilson*, 1921-NMSC-024, ¶ 7, 27 N.M. 112, 196 P. 513 (explaining that "an attorney might not decide for himself whether a given communication with his client was privileged," because "whether a given

communication is privileged[ is] to be determined by the court after an examination into the attending and characterizing circumstances under which the communication was made"); *Energy Pol'y Advocs.*, 2024-NMCA-081, ¶ 23 ("[A] public agency's burden to justify the withholding of information in an [IPRA] enforcement proceeding in district court cannot be satisfied by a good-faith assertion that all of the documents withheld or redacted were 'privileged or confidential.'").

{16}    At bottom, the Padilla Report's primary purpose—and indeed its *only* purpose—appears to be informing Dr. Maestas and the Board of the results of Attorney Padilla's investigation and of her factual findings regarding allegations against Brooks. Because the Padilla Report "neither solicit[s nor] predominantly deliver[s] legal advice," the attorney-client privilege does not apply.[3] *Bhandari*, 2014-NMCA-018, ¶ 17 (internal quotation marks and citation omitted).

[3]Because we find that no part of the Padilla Report is subject to the attorney-client privilege, we do not decide whether a public record that includes both privileged and nonprivileged information must be disclosed, either in whole or in part. We note only a split of authority on the issue. *See, e.g.*, 1 Rice, *supra*, § 7.5, at 1317-18 ("Generally, if the legal and nonlegal portions of the communication are easily identified and separated, courts should order the excision of the protected legal portions and the production of the remainder—an action which is consistent with the narrow scope of the privilege. It is not uncommon, however, for courts to declare the entire document privileged if the nonlegal portions are only an incidental part of the communication." (footnotes omitted)).

Accordingly, the Padilla Report is not exempt from inspection based on the attorney-client privileged information exception found in Section 14-2-1(G).

{17} Before we consider the second exception invoked by APS, we emphasize the importance of in-camera review when determining whether an exception may apply or inspection is required. "In camera review has the most direct capacity to evaluate both the suitability of the sought record as a public record as well as the basis for a records custodian's claim that the [public record] depicts something specifically exempted by IPRA." *Silva v. City of Albuquerque*, 2026-NMCA-054, ¶ 14 n.2, ___ P.3d ___. The district court in this case initially ruled that the Padilla Report was privileged and therefore exempt from inspection, without reviewing the report itself. *See Albuquerque J. II*, 2025-NMCA-020, ¶ 4. We cannot condone such a practice when, under IPRA, "[t]he citizen's right to know is the rule and secrecy is the exception." *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶ 34, 90 N.M. 790, 568 P.2d 1236, *superseded by statute on other grounds as recognized by Republican Party of N.M.*, 2012-NMSC-026, ¶¶ 15-16; *see also Allen*, 2012-NMSC-001, ¶ 38 ("A [party] asserting the attorney-client privilege bears the burden of demonstrating that the privilege applies."). Only by examining the documents themselves may a trial or appellate court ascertain whether a particular privilege or exception applies. *See* 2 Rice, *supra*, § 11:16, at 1138-40, 1145-46 ("In camera inspection of allegedly

privileged documents . . . is the most efficacious means that courts can employ to fulfill their role as independent fact finders for each privilege claim." (footnote omitted)). Here, while the assertion of attorney-client privilege by APS may seem persuasive in the abstract, in-camera review of the actual contents of the Padilla Report readily demonstrates that the privilege does not apply.

**C.** **Only Matters of Opinion Within the Padilla Report Are Exempt Under the Plain Language and Purpose of Section 14-2-1(C)**

{18} APS argues that the Padilla Report falls within the matters-of-opinion exception and therefore is exempt from disclosure. We disagree.

{19} In construing a statute such as IPRA, "[w]e adhere to the plain meaning rule, which requires that we give statutes effect as written without room for construction unless the language is doubtful or ambiguous or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case we construe the statute according to its obvious spirit or reason." *Jones*, 2020-NMSC-013, ¶ 17 (internal quotation marks and citation omitted). "Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous, and we will not read into a statute language which is not there." *Valenzuela v. My Way Holdings, LLC*, 2024-NMCA-009, ¶ 13, 541 P.3d 191 (internal quotation marks and citation omitted). We construe a statute "in light of its purpose and interpret it to mean what the Legislature intended it to mean and to accomplish the ends sought to be

accomplished by it." *Jones*, 2020-NMSC-013, ¶ 17 (text only) (citation omitted). For IPRA that purpose is "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. "The exceptions to IPRA's mandate of disclosure are narrowly drawn" and are to be narrowly construed. *Jones*, 2020-NMSC-013, ¶ 40 (text only) (citation omitted); *see generally Regents of Univ. of N.M. v. N.M. Fed'n of Tchrs.*, 1998-NMSC-020, ¶ 27, 125 N.M. 401, 962 P.2d 1236 (recognizing that New Mexico courts typically apply a "strict or narrow construction . . . to exceptions to the general operation of a law").

{20} APS advocates a rule that would exempt from inspection any and all investigatory records that contain "information regarding infractions or matters of opinion in the context of the employer/employee relationship." We agree with Plaintiffs that such a rule would go far beyond the plain language of Section 14-2-1(C), in violation of the principle of statutory interpretation that courts "will not read into a statute language which is not there." *Elite Well Serv., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-041, ¶ 7, 531 P.3d 635 (internal quotation marks and citation omitted). More importantly, APS's suggested rule misconstrues the very purpose of the statutory exception itself.

{21} Mindful that we strictly construe IPRA exceptions, *see Jones*, 2020-NMSC-013, ¶ 40, a restrictive reading of the matters-of-opinion exception is in order. Section 14-2-1(C) provides that "[e]very person has a right to inspect public records of this state except: . . . letters or memoranda *that are matters of opinion* in personnel files" (emphasis added). The italicized language is significant and stands apart from analogous public-records statutes in other states that expressly exempt *all* government personnel records from inspection. For example, the Mississippi exemption statute provides, "Personnel records and applications for employment in the possession of a public body . . . shall be exempt from the provisions of the Mississippi Public Records Act of 1983." Miss. Code Ann. § 25-1-100 (2015).

{22} While our Legislature similarly could have exempted personnel records or files in their entirety, or even limited the exception to "infractions or matters of opinion" as suggested by APS, it did not. According to the plain language of Section 14-2-1(C), the Legislature designated only *matters of opinion* within a personnel file as exempt from inspection, as opposed to factual matters or other kinds of information within a personnel file, which may be inspected. We have long-held that the legislative intent underlying this distinction—and of the matters-of-opinion exception as a whole—is to protect public employees from opinion-based information in various personnel-related documents "that might have no foundation

in fact but, if released for public view, could be seriously damaging to an employee." *Newsome*, 1977-NMSC-076, ¶ 12. We reaffirm this interpretation of legislative intent as the touchstone for identifying matters of opinion within a personnel file that are exempt from disclosure. This narrow reading of the exception effectuates the text of Section 14-2-1(C), does not lead to injustice, absurdity, or contradiction, and is consistent with the public policy of access "to the greatest possible information" that underlies IPRA.[4] *See* § 14-2-5. This reading also adheres to our modern approach to public records inspection, construing IPRA broadly to effectuate its purpose and recognizing only the narrow group of records the Legislature has declared exempt

---

[4]We add a cautionary note. This Court in *Newsome*, 1977-NMSC-076, ¶ 12, and the Court of Appeals in *Cox v. New Mexico Department of Public Safety*, 2010-NMCA-096, ¶ 21, 148 N.M. 934, 242 P.3d 501, listed categories of personnel records that are presumptively exempt from inspection under Section 14-2-1(C) because they typically contain "critical material and adverse opinions . . . that might have no foundation in fact but, if released for public review, could be seriously damaging to an employee." *Newsome*, 1977-NMSC-076, ¶ 12; *see also Cox*, 2010-NMCA-096, ¶ 21 (listing types of records that generally contain "information regarding the employer/employee relationship"). We agree with the Court of Appeals dissent that these categories have proven unreliable, if not downright misleading. *See Albuquerque J. II*, 2025-NMCA-020, ¶¶ 92-96 (Bosson, J., dissenting). The necessary inquiry in resolving a question of exemption under Section 14-2-1(C) is whether information within a particular record is *actually* a matter of opinion, rather than some other type of information supported by an adequate foundation in fact. To the extent that *Newsome* and *Cox* identified entire categories of personnel records that are presumptively exempt from disclosure, these judicial opinions should no longer be followed.

from public inspection. *See Republican Party of N.M.*, 2012-NMSC-026, ¶ 16 (rejecting the "rule of reason" adopted in *Newsome* and directing that "courts now should restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained in IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the [C]onstitution."); *see also State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 22, 287 P.3d 364 ("We emphasize . . . that IPRA should be construed broadly to effectuate its purposes, and courts should avoid narrow definitions that would defeat the intent of the Legislature."); *Jones*, 2020-NMSC-013, ¶¶ 38, 40 (reversing the district court's interpretation of an IPRA exception that was "untethered from the plain language of [the exception] and overbroad").

{23}     Looking to whether the Padilla Report may contain information that is exempt under the text and purpose of Section 14-2-1(C), we note that the Legislature has not defined the phrase "matters of opinion" for purposes of IPRA. We therefore "give those words their ordinary meaning absent clear and express legislative intention to the contrary." *State v Vest*, 2021-NMSC-020, ¶ 14, 488 P.3d 626 (text only) (citation omitted). In the evidentiary sense, "opinion" means "[a] person's thought, belief, or inference . . . as opposed to personal knowledge of the facts themselves." *Opinion*, *Black's Law Dictionary* (12th ed. 2024); *see also Vest*, 2021-NMSC-020, ¶ 14

("When words are not otherwise defined in a statute, . . . we [may] consult common dictionary definitions."). Similarly, other courts and commentators define the term "opinion" or "matters of opinion"—together with such companion terms as predictions, projections, estimates, motives, intentions, and other subjective evaluations—as a species of "soft" information consisting of "information that is uncertain and not objectively verifiable," *Lane v. Page*, 649 F. Supp. 2d 1256, 1272 (D.N.M. 2009) (internal quotation marks and citation omitted), and is ordinarily shielded from disclosure unless "virtually as certain as hard facts," *Kushner v. Beverly Enters.*, 317 F.3d 820, 830-31 (8th Cir. 2003) (internal quotation marks and citation omitted). Critical to this inquiry is distinguishing "soft information" from "hard information," the latter generally defined as "statements concerning objectively verifiable historical facts." Janet E. Kerr, *A Walk Through the Circuits: The Duty to Disclose Soft Information*, 46 Md. L. Rev. 1071, 1071 n.2 (1987) (internal quotation marks and citation omitted); *see generally Young v. Wilham*, 2017-NMCA-087, ¶ 22, 406 P.3d 988 ("Once the facts are correctly stated, an author's views about them are neither provably true nor provably false and therefore are protected." (text only) (quoting 1 Robert D. Sack, *Sack on Defamation*, § 4:3:2 at 4-61 (5th ed. 2024))).

{24} We conclude that the portion of the Padilla Report devoted to the factual findings of the underlying investigation far outweighs all other aspects of the report combined. But the report's fact-based emphasis should not be taken to mean that matters of opinion subject to exclusion may not be found in the document as well. Rather than deciding whether the Padilla Report contains matters of opinion in the first instance, we remand to the district court to make that determination, applying the principles discussed herein and any other criteria the district court deems relevant.[5]

**D.    Section 14-2-9(A) Requires Records Custodians to Separate and Remove or Redact Exempt Information Under Section 14-2-1(C) from a Requested Public Record Prior to Inspection and to Allow Inspection of the Nonexempt Information**

{25} Having determined that remand is appropriate, we resolve a final issue to aid the district court's consideration of the Padilla Report under Section 14-2-1(C). The parties disagree on whether the presence of exempt information under Section 14-2-1(C) requires the *entire* Padilla Report to be exempt from inspection or, instead, whether any exempt information must be redacted before the nonexempt information is produced. We considered a similar question in *Jones*, albeit with respect to law

---

[5]Pending the district court's disposition on remand, the Padilla Report shall remain sealed. *See* Rule 12-314(I)(1) NMRA ("A sealed court record shall not be unsealed except by Court order.").

enforcement records under Section 14-2-1(A)(4) (2011, amended 2025). *See* 2020-NMSC-013, ¶¶ 37-40. As we now explain, our reasoning in *Jones* applies to Section 14-2-1(C) with equal force.

{26} We held in *Jones* that IPRA requires records custodians to review requested law enforcement records for "both exempt and nonexempt information" and prohibits any document that contains both categories of information from being withheld in its entirety. *Jones*, 2020-NMSC-013, ¶¶ 39-40 ("[L]aw enforcement records containing both exempt and nonexempt information cannot be withheld in toto."). We reached this conclusion based on the interplay between the law enforcement records exception set forth in Section 14-2-1(A)(4) (2011) and the IPRA provision governing the procedure for producing public records for inspection, Section 14-2-9(A). The former statute exempted from disclosure "'law enforcement records that reveal confidential sources, methods, information or individuals accused

but not charged with a crime.'"[6] *Jones*, 2020-NMSC-013, ¶ 19 (quoting Section 14-2-1(A)(4) (2011)). The latter statute requires records custodians to review and prepare requested public records for inspection as follows:

> Requested public records containing information that is exempt and nonexempt from disclosure shall be separated by the custodian prior to inspection, and the nonexempt information shall be made available for inspection.

Section 14-2-9(A).

{27}     Reading the two provisions together, we held in *Jones* that records custodians were "required to review the requested law enforcement records, separate information that did not 'reveal confidential sources, methods, information or individuals accused but not charged with a crime' from that which did, and provide the nonexempt information for inspection." *Jones*, 2020-NMSC-013, ¶ 39 (quoting

---

[6]The law enforcement records exception was renumbered in 2019 and amended to apply only to "*portions* of law enforcement records." Section 14-2-1(D) (2019, amended 2025) (emphasis added). Although we decided *Jones* after that 2019 amendment, we clarified a records custodian's responsibilities under Section 14-2-9(A) in relation to the preamendment, 2011 language of the exception, which did not expressly limit the exception to "portions" of records. *See* 2020-NMSC-013, ¶ 39 & n.3 (explaining that the 2019 amendment "amplifies the requirements of Section 14-2-9(A)" by "specifically exempt[ing] only those '*portions*' of law enforcement records that meet certain criteria"). Like the exception in *Jones*, the matters-of-opinion exception here is not expressly limited to "portions" of the relevant public records. *See* § 14-2-1(C). The *Jones* analysis therefore guides our consideration of the matters-of-opinion exception and Section 14-2-9(A) in this case.

§ 14-2-1(A)(4) (2011)). We therefore reversed the district court, which had "allowed [the defendant] to broadly withhold law enforcement records in toto," rather than separating the information specifically exempted under the relevant exception and providing the nonexempt information for inspection. *Id.* ¶¶ 39, 49.

{28}     Our reasoning in *Jones* compels the same result in this case. As we have already explained, Section 14-2-1(C) exempts only information within a personnel file that is a matter of opinion, consistent with the purpose of the exception. Reading Section 14-2-1(C) with the procedures mandated by Section 14-2-9(A), IPRA requires records custodians to review the requested records, separate information that is a matter of opinion from that which is not, and provide the nonopinion information for inspection. And as in *Jones*, records in personnel files "containing both exempt and nonexempt information cannot be withheld in toto."[7] 2020-NMSC-013, ¶ 39.

{29}     In addition to following *Jones*, this interpretation of Section 14-2-9(A) in relation to Section 14-2-1(C) comports with other considerations as well. First, the Legislature amended Section 14-2-9(A) in 2011, adding language regarding the

---

[7]To the extent that recent Court of Appeals decisions such as *Henry*, 2023-NMCA-078, ¶¶ 18-20, and *Energy Pol'y Advocs.*, 2024-NMCA-081, ¶ 16, suggest documents containing opinion should be withheld in toto, they are abrogated and should no longer be followed.

treatment of electronic documents: "Exempt information in an electronic document shall be removed along with the corresponding metadata prior to disclosure by utilizing methods or redaction tools that prevent the recovery of exempt information from a redacted electronic document." This language compels the conclusion that Section 14-2-9(A) requires records custodians to separate exempt and nonexempt information contained in a single public record by removing or redacting exempt information from a document before disclosing the nonexempt information to the public. After all, if an electronic document must be redacted to remove exempt material while allowing nonexempt material to remain, the same must be true of the print version of the same document. The logic and effect of the amendment support no other viable interpretation.

{30}    Second, we recognize that the New Mexico Department of Justice has long held the view that Section 14-2-9(A) "requires the applicable records custodian to separate out the exempt information in a file or document before making the record available for inspection" and has counseled countless government entities subject to IPRA on its meaning. *See* N.M. Dep't of Justice, *The Inspection of Public Records Act: A Compliance Guide on Government Transparency for New Mexicans and Their Public Officials* 57 (9th ed. 2024) (*IPRA Compliance Guide*). The most recent

edition of the *IPRA Compliance Guide* explains the rationale underlying this approach as follows:

> In many instances, a record kept by a public body will contain information that is exempt from the right to inspect as well as information that must be disclosed. . . . The fact that a file may contain some information that may not be disclosed does not necessarily protect all the information from public disclosure. Where protected and public information are contained in the same document, the records custodian may redact or block out the protected information before providing the document to the public or including it in the file available for inspection.

*Id.*

{31} The Department of Justice has advocated this viewpoint since the enactment of Section 14-2-9(A) more than three decades ago. *See* Off. of the N.M. Att'y Gen., *The Inspection of Public Records Act: A Compliance Guide for New Mexico Public Officials and Citizens* 20 (November 1993) ("The Act requires the applicable records custodian to separate out the exempt information in a file or document before making the record available for inspection. The fact that a file may contain some information which may not be disclosed does not protect all the information from public disclosure."). While the *IPRA Compliance Guide* is not binding on this or other New Mexico courts, *see Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 21, 299 P.3d 424, we are persuaded by its consistent guidance on this issue. *See United States v. Reese*, 2014-NMSC-013, ¶ 36, 326 P.3d 454 ("Attorney General opinions and

advisory letters do not have the force of law. . . . [H]owever, they persuasively establish what New Mexico has consistently understood the law to be.").

{32} Finally, and perhaps most importantly, this interpretation of Section 14-2-1(C) with Section 14-2-9(A) gives effect to the stated purpose of IPRA: "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. To hold otherwise would not only be contrary to this purpose, but as this case demonstrates, exempting an entire record because it may contain trace matters of opinion would invite abuse and frustrate both the "fundamental right to inspect public records" and the "presumption in favor of access" under IPRA. *San Juan Agric. Water Users Ass'n*, 2011-NMSC-011, ¶ 15 (internal quotation marks and citation omitted).

## IV.   CONCLUSION

{33} For the foregoing reasons, we reverse the Court of Appeals, the decision of the district court granting summary judgment to APS, and the decision of the district court denying partial summary judgment to Plaintiffs. We remand the matter to the district court to conduct an in-camera review to determine whether any information within the Padilla Report is exempt from inspection under the text and purpose of Section 14-2-1(C) before the nonexempt information is produced.

**{34}** **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____

**JULIE J. VARGAS, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**DAVID K. THOMSON, Justice**